MEMORANDUM OPINION
 

 DAVIDSON, District Judge.
 

 After almost four years of litigation before the undersigned, the parties now come before the court seeking final approval of settlements between them which will terminate this cause. In addition, the petitioners seek approval of both an award of attorneys’ fees and incentive awards for the named plaintiffs. The total amount of proceeds from the proposed settlements in this case is $27,525,-000. 00, and constitutes the sum of multiple settlement agreements with the various defendants.
 

 1. APPROVAL OF THE SETTLEMENTS
 

 Federal Rule of Civil Procedure 23(e) provides:
 

 (e) Dismissal or Compromise. A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the Court directs.
 

 Fed.R.Civ.P. 23(e). The rules do not provide, however, a standard by which to determine whether any settlement should be approved. Nonetheless, courts have determined that class action settlements should be approved when they are “fair, adequate and reasonable.”
 
 In re Corrugated Container Antitrust Litig.,
 
 643 F.2d 195, 207 (5th Cir.1981),
 
 cert. denied,
 
 456 U.S. 998, 102 S.Ct. 2283, 73 L.Ed.2d 1294 (1982);
 
 Parker v. Anderson,
 
 667 F.2d 1204, 1209 (5th Cir. Unit A),
 
 cert. denied,
 
 459 U.S. 828, 103 S.Ct. 63, 74 L.Ed.2d 65 (1982). In making this determination, this court is to consider six factors:
 

 
 *497
 
 (1) whether the settlement was the product of fraud or collusion;
 

 (2) the complexity, expense and likely duration of the litigation;
 

 (3) the stage of the proceedings and the amount of discovery completed;
 

 (4) the factual and legal obstacles to prevailing on the merits;
 

 (5) the possible range of recovery and the certainty of damages; and
 

 (6) the respective opinions of the participants, including class counsel, class representatives, and absent class members.
 

 Reed v. General Motors Corp.,
 
 703 F.2d 170, 172 (5th Cir.1983);
 
 Parker,
 
 667 F.2d at 1209;
 
 In re Prudential-Bache Energy Income Partnerships Sec. Litig.,
 
 815 F.Supp. 177, 180 (E.D.La.1993);
 
 In re Shell Oil Refinery,
 
 155 F.R.D. 552, 559 (E.D.La.1993).
 

 Other relevant factors may also be considered, such as whether the settlement amount is much less than that sought in the complaint, the defendant’s inability to pay a greater amount, the number of objectors to the settlement, and whether any cogent objections have been raised to the settlement. Manual for Complex Litigation, (Third) § 30.42 (hereinafter “Manual”);
 
 In re Ford Motor Co. Bronco II Litig.,
 
 1995 WL 222177, *4 (E.D.La. April 12, 1995) (Memorandum and Order Denying Approval of Class Settlement).
 

 A. EXISTENCE OF FRAUD OR COLLUSION
 

 There is nothing before the court which indicates that fraud or collusion is involved in any way with the settlement agreements before the court. United States Magistrate Judge J. David Orlansky was intimately involved with the settlement negotiations among the parties in this action, and the undersigned firmly believes that without Judge Orlansky’s diligent efforts, this case would have proceeded to a lengthy and arduous trial. As well, both Judge Orlansky and the undersigned conducted the final settlement conference wherein a settlement agreement was reached with regard to the only remaining defendant at that time, Delta Pride Catfish, Inc. This court has been kept well informed as to the progress of settlement negotiations in this case from multiple sources, and is of the opinion that all counsel involved vigorously represented the interests of their respective clients. Finally, the court notes that the matter of attorneys’ fees was not negotiated in conjunction with the settlement agreements, but rather was left as a separate determination to be made by the court.
 
 In re Ford Motor Co. Bronco II Litig.,
 
 1995 WL 222177, *4 (E.D.La. April 12, 1995) (“Separate negotiation of the class settlement before an agreement on fees is generally preferable to avoid conflicts of interest between the attorneys and the class.”). Application of this first factor favors approval of the settlement agreements.
 

 B. COMPLEXITY OF CASE
 

 This case involved allegations of price fixing which allegedly occurred over a ten year period. Due to the sheer size of evidence, the number of witnesses, and the reams of documentary evidence, this court can most assuredly state that this matter was factually complex. In addition, the plaintiffs faced some legal dilemmas which presented difficult questions for the parties and the court, not the least of which was the admissibility of the testimony of their proposed" expert on damages, Dr. John C. Beyer.
 
 See, infra,
 
 § 1(D). This case was sufficiently complex that resolution by settlement was a most favorable option for all involved. This factor favors approval of the settlements.
 

 C. STAGE OF PROCEEDINGS; DISCOVERY
 

 Settlement with the defendants in this cause was staggered throughout the course of litigation, with the plaintiff class reaching an agreement with the last settling defendant on December 20, 1995. Trial was set to begin in this matter on January 8, 1996 — approximately two weeks later. All discovery had been completed, and the parties had already submitted a voluminous final pretrial order to the undersigned. In addition, numerous motions had been made and this court had already ruled upon many of them, thereby more firmly establishing a legal framework for trial of this matter.
 
 E.g.,
 
 
 *498
 

 In re Catfish Antitrust Litig.,
 
 908 F.Supp. 400 (N.D.Miss.1995)
 
 (Catfish
 
 III) (denying motions for summary judgment);
 
 In re Catfish Antitrust Litig.,
 
 164 F.R.D. 191 (N.D.Miss.1995)
 
 (Catfish II)
 
 (granting motion to release grand jury transcripts);
 
 In re Catfish Antitrust Litig.,
 
 826 F.Supp. 1019 (N.D.Miss.1993)
 
 (Catfish I)
 
 (certifying class). This court is fully confident that all involved knew the relative strengths and weaknesses of their respective positions, and that nothing was left to do except proceed to trial. In light of this fact, this factor favors approval of the settlements.
 

 D. PROBABILITY OF SUCCESS
 

 All in all, the court believes that the plaintiffs had a relatively good chance of prevailing on the merits of this cause. There was already evidence before the court with regard to numerous meetings of the defendants’ representatives concerning price fixing, and some of this evidence was quite damning.
 
 Catfish III,
 
 908 F.Supp. at 408-09. Nevertheless, the plaintiffs still faced some potentially difficult obstacles to recovery. Several viable legal defenses were still available to the defendants, such as application of the Clayton Act’s statute of limitations and the protection of the corporate entity.
 
 Id.
 
 at 407-08, 411-13. The greatest threat to recovery, however, did not concern the establishment of liability but rather the matter of damages. This court held in abeyance any ruling on motions to exclude or limit the testimony of the plaintiffs’ damages expert.
 
 Id.
 
 at 410. While the court has never decided the issue and it will not do so today, it is sufficient to note that the court had serious concerns about the admissibility of Dr. Beyer’s testimony because of the apparent novelty of his economic theories in light of the dictates of
 
 Daubert v. Merrell Dow Pharmaceuticals, Inc.,
 
 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). This court is of the opinion that this factor favors approval of the settlements.
 

 E. RANGE OF POSSIBLE RECOVERY
 

 Based upon the opinions of Dr. Beyer, the plaintiffs have previously argued to the court that the upward range of possible recovery in this matter is quite monumental. In the opinion of Dr. Beyer, the injury inflicted by this alleged conspiracy caused damage to the extent of artificially raising catfish prices approximately 8.3% over a ten year period. As one of the objectors to the approval of these settlements opined, “[a] simple extrapolation yields damage calculations in the range of several hundreds of millions of dollars.” When considering the volume of catfish sold during the period of the alleged conspiracy, such a statement seems most accurate. In addition, the plaintiffs sought treble damages under the Clayton Act, and had the opportunity to recover attorneys’ fees from the defendants.
 
 Catfish III,
 
 908 F.Supp. at 404, 410; 15 U.S.C. § 15(a) (Supp. 1995).
 

 However, a judgment against defendants who cannot pay is worthless. In the opinion of this court, it was also very likely that recovery could have been obtained against some, but not all, of the defendants in this case. The defendants who were the “deep pockets” in this cause were also those defendants who were most likely to avoid liability. Conversely, the defendant most likely to be found liable was Delta Pride. Due to the nature of Delta Pride’s business organization as a cooperative, and in light of its financial condition, any judgment against it had a fair chance of being worthless as to amounts in excess of these settlement agreements. When the court considers not only the potential provable damages in this suit, but also 1) the possibility of a finding of liability against only some of the defendants and 2) the ability of the defendants to actually pay such a large award, it is apparent that this factor favors approval of the settlement agreements in this case.
 

 F. OPINIONS OF PERSONS INVOLVED
 

 The only persons who do not have a favorable view of these proposed settlements are, to the extent of the court’s knowledge, the two objectors to the settlement. These two objectors are Schwegmann’s Giant Supermarkets, Inc. (“Schwegmann’s”), and Cajun Brothers Seafood (“Cajun Brothers”).
 
 *499
 
 Both Sehwegmaim’s and Cajun Brothers object to the amount of the settlement as too small, as merely “pennies on the dollar” compared to the opinions of the plaintiffs’ damages expert Dr. John C. Beyer. Further, both objectors express severe concern over the fact that they have not been made aware exactly how much of the settlement amount will ultimately be awarded to them individually. As to their last concern, the court recognizes that under present facts the situation is unavoidable. It is impossible for anyone to determine how much each class member will receive from this settlement until the number of claimant class members eligible to obtain a portion of this settlement is known. As to their other concerns, the court does recognize a substantial disparity between the asserted amounts of damage and the ultimate settlement amounts.
 

 As already discussed, however, the plaintiffs’ problems did not end with the task of establishing liability. They were also faced with problems establishing liability against multiple defendants, with establishing the appropriate amount of damages and then, eventually, with the burden of collecting any damages awarded. The objections of Sehwegmann’s and Cajun Brothers are insufficient to convince this court that in light of all the facts and circumstances, these settlements are not fair and reasonable.
 

 G. OTHER FACTORS
 

 1. THE NUMBER OF OBJECTORS
 

 As noted by the court, only two (2) class members have appeared before the court to object to the approval of these settlement agreements — Schwegmann’s and Cajun Brothers. When compared to the number of class members, this factor clearly favors approval of the settlement.
 

 2. COGENT OBJECTIONS
 

 The court has already discussed the substantive objections to these settlement agreements and finds no reason to readdress them here.
 

 3. DEFENDANTS’ INABILITY TO PAY A GREATER AMOUNT
 

 The court has already discussed this factor as well within the context of prior analysis. This factor favors approval of the settlement agreements.
 

 H. CONCLUSION
 

 In light of all of the factors, the undersigned finds that these settlement agreements are “fair, adequate and reasonable” with respect to the class and should be approved. Objections to approval of these settlements are noted, but the court does not believe that the objections have sufficient merit to prevent approval of these agreements.
 

 II. ATTORNEYS’ FEES, COSTS AND INCENTIVE AWARDS
 

 A. ATTORNEYS’FEES
 

 Now that the court has determined that it will approve the settlement, it must now turn to address the other relief requested by the petitioners. An award of attorneys’ fees has historically been determined through the use of two methods — the lodestar method and the percentage fee method. Likewise, there are generally only two instances when federal courts award attorneys’ fees. The first is statutory fee cases, where law provides that the prevailing party is to recover fees from the opposing side. The second is in a “common fund” case, where the conduct of plaintiffs’ counsel has created a common fund of recovery for their clients.
 

 1. WHAT APPROACH SHOULD BE USED?
 

 The majority of circuits apply a “percentage fee” approach in common fund cases such as the one at bar, either exclusively or at the discretion of the district court.
 
 E.g., In re Thirteen Appeals,
 
 56 F.3d 295, 308 (1st Cir.1995);
 
 In re General Motors Carp. PickUp Truck Fuel Tank Litig.,
 
 55 F.3d 768, 821 (3rd Cir.1995);
 
 Swedish Hosp. Corp. v. Shalala, 1
 
 F.3d 1261, 1268 (D.C.Cir.1993);
 
 Harman v. Lyphomed, Inc.,
 
 945 F.2d 969, 974-75 (7th Cir.1991);
 
 Camden I Condominium
 
 
 *500
 

 Assn., Inc. v. Dunkle,
 
 946 F.2d 768, 771 (11th Cir.1991);
 
 Paul, Johnson, Alston & Hunt v. Graulty,
 
 886 F.2d 268, 271 (9th Cir.1989);
 
 Brown v. Phillips Petroleum Co.,
 
 838 F.2d 451, 454 (10th Cir.1988). The United States Supreme Court has also noted that in a common fund ease, application of a “percentage fee” approach is the proper method in awarding attorneys’ fees.
 
 Blum v. Stenson,
 
 465 U.S. 886, 900 n. 16, 104 S.Ct. 1541, 1550 n. 16, 79 L.Ed.2d 891, 903 n. 16 (1984) (“Unlike the calculation of attorneys’ fees under the ‘common fund doctrine,’ where a reasonable fee is based on a percentage of the fund bestowed upon the class____”). Indeed, every “common fund” case to come before the Supreme Court utilized a percentage approach, and when given the opportunity, the Court declined to adopt the lodestar method in the common fund context.
 
 E.g., Boeing Co. v. Van Gemert,
 
 444 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980);
 
 see also Sprague v. Ticonic Nat’l Bank,
 
 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939);
 
 Central R.R. & Banking Co. v. Pettus,
 
 113 U.S. 116, 127-28, 5 S.Ct. 387, 393, 28 L.Ed. 915 (1885);
 
 Trustees v. Greenough,
 
 105 U.S. (15 Otto) 527, 26 L.Ed. 1157 (1881).
 

 Numerous district courts within the Fifth Circuit have also applied a percentage fee approach.
 
 See, e.g., In re Medical Care America Sec. Lit.,
 
 Civil Action No. 3:92evl996-J (N.D.Tex. Apr. 24,1996) (Order and Final Judgment);
 
 In re Prudential-Bache,
 
 1994 WL 150742, *5 (E.D.La. April 13, 1994);
 
 In re Shell Oil,
 
 155 F.R.D. at 573;
 
 TransAmerica Refining Corp., et al. v. Dravo Corp., et al.,
 
 Civil Action No. H-88-789 (S.D.Tex. May 24, 1992) (Order granting Joint Petition for Attorneys’ Fees and Expenses);
 
 In re Middle South Util. Sec. Litig.,
 
 Civ.A. No. 85-3681, 1991 WL 275769, at *1 (E.D.La. Dec. 19, 1991);
 
 Kleinman v. Harris,
 
 CM Action No. 3:89-CV-1869-X (N.D.Tex. June 21, 1993) (approving fee of approximately one-third of benefit achieved of $1,170,000);
 
 In re Granada Partnerships Sec. Litig.,
 
 MDL No. 837 (S.D.Tex. Oct. 16, 1992) (fees in the amount of 30% awarded under a pure percentage of recovery approach);
 
 In re Lomas Fin. Corp. Sec. Litig.,
 
 Civil Action No. CA-3-89-1962-G (N.D.Tex. Jan. 28, 1992) (approving fee of almost one-third of benefit achieved of over $20 million);
 
 Rywell v. Healthvest,
 
 CA3-89-2394-H (N.D.Tex. Dee. 3,1991) (awarding fee of 30% of benefit achieved);
 
 Teichler v. DSC Communications Corp.,
 
 CA 3-85-2005-T (N.D.Tex. Oct. 22, 1990) (plaintiffs’ counsel awarded $10 million on a settlement of $30 million in securities class action);
 
 Finkel v. Docutel/Olivetta Corp.,
 
 CA3-84-0566-T (N.D.Tex. Feb. 23, 1990) (awarding fees amounting to 33% of settlement fund).
 

 The Fifth Circuit itself, however, has nevertheless consistently applied a “lodestar method” to determine the proper amount of an attorneys’ fee award in common fund cases.
 
 Louisiana Power & Light Co. v. Kellstrom,
 
 50 F.3d 319, 324 (5th Cir. 1995);
 
 Longden v. Sunderman,
 
 979 F.2d 1095, 1099 (5th Cir.1992);
 
 Copper Liquor, Inc. v. Adolph Coors Co.,
 
 684 F.2d 1087, 1092 (5th Cir.1982).
 

 The “lodestar” is computed multiplying the number of hours reasonably expended by the prevailing hourly rate in the community for similar work. The court then adjusts the lodestar upward or downward depending on the respective weights of the twelve factors set forth in
 
 Johnson v. Georgia Highway Express, Inc.,
 
 488 F.2d 714, 717-19 (5th Cir.1974).
 

 Longden,
 
 979 F.2d at 1099. Preference for the percentage method is more logical in complex litigation, and the lodestar approach has been roundly condemned in that context:
 

 The lodestar method makes considerable demands upon judicial resources since it can be exceptionally difficult for a court to review attorney billing information over the life of a complex litigation and make a determination about whether the time devoted to the litigation was necessary or reasonable____ The lodestar procedure requires detailed involvement by the District court, evaluating the reasonableness of expenditure of attorney time and effort, and making comparative inquiries on reasonable rates for those services. Given the complexity of many class action lawsuits, combined with the degree of detailed review required and considering the heavy workload of most district court judges,
 
 *501
 
 lodestar calculation is likely to cause significant delay between the creation of a common fund and remuneration of class counsel. In contrast, the application of a pereentage-of-the-fund methodology is relatively straightforward and much less time consuming.
 

 Garza v. Sporting Goods Properties, Inc.,
 
 1996 WL 56247, n. 35 (W.D.Tex. Feb. 6,1996) (quoting
 
 Swedish Hosp. Corp.,
 
 1 F.3d at 1269-70). The undersigned believes that application of the lodestar approach in this case is neither feasible nor necessary. Determination of reasonable rates for the number of attorneys involved in this litigation would be most difficult, especially in light of the fact that most of them hail from districts outside of Mississippi and may be entitled to a hourly rate higher than what is normally considered reasonable in this district.
 
 Todd Shipyards Corp. v. Turbine Serv.,
 
 592 F.Supp. 380, 392 (E.D.La.1984);
 
 Riddell v. National Democratic Party,
 
 545 F.Supp. 252, 256 (S.D.Miss. 1982). Likewise, in order to properly apply the lodestar method, this court would have to review reams of itemized billing records in order to determine whether all of the approximately 39,453 charged hours were “reasonably expended” on this litigation.
 
 Louisiana Power,
 
 50 F.3d at 325-27; Uniform Local Rule 15(b)(3)(A) (requiring movants who request attorneys’ fees to submit “an itemized statement of all time expended by counsel, together with a brief description of the services performed during each period of time itemized.”). Resolution of other cases on this court’s already crowded docket would be severely delayed if the court had to attack such an administrative behemoth. Numerous other problems with the lodestar approach have been appropriately noted by other courts.
 
 E.g., Swedish Hosp.,
 
 1 F.3d at 1268-70;
 
 In re Prudential-Bache,
 
 1994 WL 150742, *2-5 (E.D.La. April 13, 1994);
 
 Court Awarded Attorneys’ Fees: Report of the Third Circuit Task Force,
 
 108 F.R.D. 237, 246-49 (Oct. 8, 1985). In addition, courts which have applied both methods have normally reached comparable awards.
 
 E.g., Longden,
 
 979 F.2d at 1100 n. 11;
 
 In re Shell Oil,
 
 155 F.R.D. at 573. In light of the relative worth and utility of the available methods for determining attorneys’ fees awards in a large class litigation, this court will apply a reasonable percentage approach to an award of attorneys’ fees in this case. Application of the lodestar approach to the instant litigation would be unduly burdensome . upon the court, and would not likely result in a more reasonable award.
 

 Now that the court has determined that the proper method to apply in this case is the “percentage fee” approach, the court’s inquiry turns to what particular percentage is to be used. While other courts have adopted varying benchmark numbers, the undersigned finds that the adoption of an initial benchmark percentage of 25% is most reasonable.
 
 Paul, Johnson, Alston & Hunt v. Graulty,
 
 886 F.2d 268, 272 (9th Cir.1989) (adopting 25% benchmark);
 
 In re Shell Oil,
 
 155 F.R.D. at 573 (noting most common fund fee awards range between 20% and 30%);
 
 Camden I,
 
 946 F.2d at 774 (“The majority of common fund fee awards fall between 20% and 30% of the fund.”);
 
 Bowen v. Southtrust Bank of Alabama,
 
 760 F.Supp. 889, 899 (M.D.Ala.1991) (adopting benchmark of 25%).
 

 Regardless of which method is applied, this court must still make an award of fees which- is reasonable. In order to ensure the reasonableness of the percentage applied, many circuits which apply the percentage method still make application of the
 
 Johnson
 
 lodestar factors.
 
 Uselton v. Commercial Lovelace Motor Freight, Inc.,
 
 9 F.3d 849, 853 (10th Cir.1993);
 
 Brown v. Phillips Petroleum Co.,
 
 838 F.2d 451, 454-56 (10th Cir.),
 
 cert. denied,
 
 488 U.S. 822, 109 S.Ct. 66, 102 L.Ed.2d 43 (1988);
 
 Camden I,
 
 946 F.2d at 775;
 
 Torrisi v. Tucson Elec. Power Co.,
 
 8 F.3d 1370, 1376 (9th Cir.1993). While all of the
 
 Johnson
 
 factors are not necessarily relevant under a percentage fee approach, this court believes that those factors are the most proper standard with which to weigh the reasonableness of a fee award.
 
 Longden,
 
 979 F.2d at 1100. The twelve
 
 Johnson
 
 factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contin
 
 *502
 
 gent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the “undesirability” of the case; (11) the nature and the length of the professional relationship with the client; (12) awards in similar cases.
 
 Johnson,
 
 488 F.2d at 717-719. Even though the
 
 Johnson
 
 factors must be addressed to ensure that the resulting fee is reasonable, not every factor need be necessarily considered.
 
 Uselton,
 
 9 F.3d at 854 (“rarely are all the
 
 Johnson
 
 factors applicable; this is particularly so in a common fund ease.”) (quoting
 
 Brown, 838
 
 F.2d at 456). Based upon an application and analysis of these factors, the court can make any adjustments necessary to the benchmark percentage rate in order to ensure that a reasonable amount is awarded.
 

 a. TIME AND LABOR REQUIRED
 

 This litigation began almost four years ago, and has lumbered along on this court’s docket ever since. During the course of this litigation, this cause has proceeded in a manner not unusual for a case of this magnitude. While a vast amount of work has been put forth by all involved, the expenditure is not surprising in light of the nature of the claims and the facts involved. The court is of the opinion that the magnitude of work required in this litigation is accurately reflected in the nature of an award based upon percentage of recovery, and therefore as a general matter this factor does not significantly affect the reasonableness of an award in this case.
 

 In addition, this matter did not have to go to trial. The trial of this matter was scheduled for four weeks before the undersigned, and the court is certain that a substantial amount of blood, sweat and tears would have been expended by all involved last January had this matter not been resolved before trial. In light of the nature of a contingency fee award, the fact that this matter was resolved before trial, and that pre-trial matters were both lengthy and arduous, the court is of the opinion that this factor does not warrant an adjustment in this case.
 

 b. NOVELTY AND DIFFICULTY OF THE ISSUES/SKILL REQUIRED TO PERFORM
 

 While this case did indeed involve factually complex issues due to the large nature of this litigation, the undersigned does not believe that the issues were so novel or difficult as to require an adjustment to the benchmark percentage. Likewise, the court does not believe that the skill required of counsel in this litigation was of such a high caliber that any adjustment is warranted.
 

 c. PRECLUSION OF OTHER EMPLOYMENT
 

 The petitioners argue to the court that “the prosecution of this litigation significantly reduced their opportunity for employment in other cases.” The court does not dispute this statement, but counsel has not demonstrated how this reduction of employment in other cases is any greater than would normally be expected from expending time in pursuit of any litigation, nor how any such reduction is not compensated for in light of the sheer size of the proposed settlements. After consideration, the court finds that this factor should not alter the benchmark rate,
 

 d. CUSTOMARY FEE
 

 The court has considered the customary fees the petitioning attorneys assert they charge in similar cases. The court does not find that this factor warrants any adjustment.
 

 e. FIXED OR CONTINGENT FEE
 

 Each petitioning law firm and attorney represents to the court via affidavit that they undertook representation of the plaintiffs in this action on a contingency basis. They shall receive an award based upon a percentage of recovery in any event, and the undersigned does not feel that this factor warrants an adjustment to the benchmark rate today.
 

 f. TIME LIMITATIONS IMPOSED BY THE CLIENT
 

 As this was a class action suit, this factor has no application.
 

 g. AMOUNT INVOLVED/RESULTS OBTAINED
 

 The award of damages sought in this case was indeed substantially larger than the
 
 *503
 
 amounts involved in the settlements before the eourt today. The eourt has already acknowledged this discrepancy within the context of approving the settlement agreements. The discussion given it earlier is also applicable here. Important to this court’s decision is the relative solvency of the parties involved in this case. During settlement negotiations involving the plaintiffs and defendant Delta Pride, for example, both sides had experienced bankruptcy attorneys intimately involved and rendering their advice. While defendant Delta Pride appeared to this court to hold the most exposure to liability in the event a trial was held, it likewise possessed a unique financial condition which precluded it from paying as large a settlement as the defendants ConAgra and Hormel. This factor does not warrant an adjustment of the benchmark rate in this case, particularly in light of the nature of a contingency award,
 

 h.
 

 EXPERIEN CE/REPUTATION/ABILITY OF ATTORNEYS
 

 In the court’s opinion, all of the attorneys involved in this case have performed quite well on behalf of their clients, and the eourt congratulates them on their performance in this matter. Many of the counsel involved have national reputations within the antitrust arena, and have lived up to their name. Nevertheless, the undersigned does not believe that this factor sufficiently warrants an adjustment of the benchmark percentage in this case.
 

 i. UNDESIRABILITY OF THE CASE
 

 Ultimately, the court finds that this case was no more undesirable than any other case of comparable magnitude. While cases certainly become less desirable to some degree as they increase in size and complexity, they also usually increase simultaneously in terms of potential reward on a contingency basis. In that the size of potential recovery was heightened proportionately to the magnitude of the work involved, the undersigned does not believe that any adjustment is necessitated by this factor.
 

 j. NATURE/LENGTH OF PROFESSIONAL RELATIONSHIP WITH THE CLIENT
 

 This factor has no application in this court’s analysis.
 

 k. AWARDS IN SIMILAR CASES
 

 The petitioners present to the court citations of numerous cases wherein the presiding judge awarded fees within a range of fifteen (15) to fifty (50) percent. In most of the decisions cited, the awarded fee was in the range of thirty (30) to thirty-three and one third (33jé) percent. Cajun Brothers encourages the court to adopt a benchmark rate of 15% as “a more reasonable figure” for attorneys’ fees, but directs the court to no additional authority for this figure. However, it is not unusual to find fee awards ranging between those amounts, even within the Fifth Circuit.
 
 E.g., In re Prudential-Bache,
 
 1994 WL 86682 (E.D.La. Mar. 7, 1994) (noting typical range of 17.5% to 33%);
 
 In re Tenneco Inc. Sec. Litig.,
 
 Civil Action No. H-91-2010 (S.D.Tex. June 19, 1992) (approving fee of 25% of benefit achieved of $50 million);
 
 In re First Republic Bank Sec. Litig.,
 
 CA 3-88-0641-H (N.D.Tex. Feb. 28, 1992) (27.5% fee award);
 
 In re Middle South Utils. Sec. Litig.,
 
 Civil Action No. 85-3681 Section “H”, 1991 WL 275769, at *1, 1991 U.S.Dist. LEXIS 18062, at *2 (E.D.La. Dee. 17, 1991) (20% fee award). In light of these and other decisions considered by the court, the undersigned is of the opinion that the 25% benchmark is well centered within the range of fees normally awarded in common fund cases. No adjustment shall be made for this factor.
 

 B. COSTS
 

 Petitioners seek recovery of costs in this action in the amount of $1,726,681.08. While objections on behalf of two class members have been filed as to the amount of the attorneys’ fee award, no party has objected to the particular amount of costs. The court has also carefully reviewed the substantial amount of itemizations of costs provided to the court, and the undersigned finds them reasonable under the circumstances of this litigation. As such, and finding no reason to determine that the asserted costs were unreasonable, the court will award the full amount requested.
 

 C. INCENTIVE AWARDS
 

 It is not unusual for a court to make an “incentive award” to named plaintiffs be
 
 *504
 
 cause of their sacrifices in pursuit of litigation on behalf of the class.
 
 See, e.g., Gaskill v. Gordon,
 
 1995 WL 746091, *4 (N.D.Ill. Dec. 14, 1995);
 
 White v. National Football League,
 
 822 F.Supp. 1389, 1406 (D.Minn. 1993);
 
 Bleznak v. C.G.S. Scientific Corp.,
 
 387 F.Supp. 1184, 1189 (E.D.Pa.1974). In this case, the four named plaintiffs seek an incentive award of $10,000.00 each for activities which facilitated resolution of this cause. Notice of their intention to seek such an award was presented to the class, and to date no class member has objected to such an award nor its amount. The court finds an incentive award appropriate in this case and will therefore award each of the named plaintiffs an incentive award in the requested amount of $10,000.00.
 

 D. FINAL CALCULATION
 

 Upon due consideration of all of the
 
 Johnson
 
 factors, the undersigned is of the opinion that a final adjustment of the benchmark rate need not be made. Many factors which might have more effect in a case where the lodestar approach was used are less important here, where the very nature of a percentage recovery encompasses many of the concerns that these factors address. In addition, the court has considered the objections to the amount of attorneys’ fees presented by Sehwegmann’s and Cajun Brothers. The court believes that any factors which might individually warrant adjustments and have already been noted by the court serve to “cancel each other out,” and that the 25% benchmark rate should not be adjusted — its straight application will result in a reasonable fee for the petitioners. In light of the determinations heretofore made by the court, the final breakdown of today’s decision is as follows:
 

 Gross Settlement Amount $27,525,000.00
 

 Less Total Expenses - 1,726,681.08
 

 Net Settlement Amount 25,798,318.92
 

 Net Settlement Amount 25,798,318.92
 

 Applied Percentage Rate x .25
 

 Attorneys’ Fees Award 6,449,579.73
 

 Net Settlement Amount 25,798,318.92
 

 Less Attorneys’ Fee 6,449,579.73
 

 Balance for Total Class Distribution 19,348,739.19
 

 Balance for Total Class Distribution 19,348,739.19
 

 Less Incentive Awards - 40,000.00 (4 x $10,000.00)
 

 Balance for General Class Distribution 19,308,739.19
 

 The award of attorneys’ fees in this case is in an aggregate amount, with distribution among the various firms and attorneys to be made by agreement among class counsel.
 
 Longden,
 
 979 F.2d at 1101 (“The district court acted well within its discretion in awarding an aggregate sum ... leaving apportionment of that sum up to the ... attorneys themselves.”) (citing
 
 In re Agent Orange Prod. Liab. Litig.,
 
 818 F.2d 216, 223 (2d Cir.1987)). In the event that class counsel cannot agree to an equitable distribution between themselves, the court can then appoint a Special Master, paid from the corpus of the attorneys’ fees award, to make both a report to the court and recommendation as to how the funds should be distributed.
 

 CONCLUSION
 

 After careful consideration of all the relevant factors, the undersigned is of the opinion that the settlement agreements between the plaintiff class and the defendants in this case are “fair, adequate and reasonable” and should be given final approval. Further, after consideration of the
 
 Johnson
 
 factors, the court has calculated a reasonable attorneys’ fee to be awarded to class counsel, in the base amount of $6,449,579.73. The motion to grant incentive awards to the named plaintiffs in this action shall be granted, and they shall be given such an award in the base amount of $10,000.00 each. Finally, the petitioners’ request for an award of costs shall be granted, in the base amount of $1,726,681.08.
 

 A separate order in accordance with this opinion shall issue this day.