**Melanie BATCHELDER, Individually and on Behalf of All Others Similarly Situated Plaintiffs**

v.

**KERR–McGEE CORP.; et al. Defendants**

**In re Clarence Donald ARWOOD, Sr. Debtor**

**No. 1:01CV77–D–A.**

United States District Court, N.D. Mississippi, Eastern Division.

Feb. 21, 2003.

Richard T. Bennett, Joseph E. Lotterhos, Bennett, Lotterhos, Sulser & Wilson, Jackson, Hunter William Lundy, Lundy & Davis, Lake Charles, LA, Michael G. Nast, Dianne M. Nast, Roda & Nast, PC, Lancaster, PA, for Robert Conner, Individually and on Behalf of All Others Similarly Situated, Floyd T. Sizemore, Individually and on Behalf of All Others Similarly Situated, plaintiffs.

J. Gordon Flowers, Gholson, Hicks & Nichols, Columbus, Lana K. Alcorn, William Lawrence Deas, Lightfoot Franklin & White, Birmingham, AL, Peter J. Nickles, Thomas L. Cubbage, III, Covington & Burling, Washington, DC, for Kerr–McGee Chemical LLC, defendant.

Dennis Harmon, Dennis Harmon, Attorney, Columbus, for Howell Austin, James William Trimm, movants.

Ann Mostoller, Esq., Oak Ridge, TN, Chapter 7 Trustee.

F. Chris Cawood, Esq., Kingston, TN, for Debtor.

## OPINION APPROVING CLASS SETTLEMENT

DAVIDSON, Chief Judge.

Presently before the court is the parties' joint consent motion seeking final approval of class settlement pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, and class counsel's separate motion seeking an award of attorneys' fees and costs. Upon due consideration, the court finds that both of the motions should be granted.

### A. Factual Background

Since 1928, the Defendants and their predecessors in interest have operated a creosoting plant in Columbus, Mississippi. The plant, which the Defendants actually purchased in 1964, occupies ninety acres within the city limits of Columbus and treats wood for use by railroads using a preservative called creosote. Creosote is an oily, liquid substance that is produced as a by-product of the distillation of coal tar and is a widely used wood treating preservative; its use prevents the deterioration of railroad ties, crossings and pilings. At the Columbus plant, the Defendants treat wood with creosote by placing the wood into a pressurized cylinder and injecting creosote into the wood. The Plaintiffs allege that this process has contaminated the groundwater around the plant and has released vapors, mists and dust into the community, causing the Plaintiffs to suffer adverse health effects as well as damage to their real and personal property.

In March of 2001, the Plaintiffs filed this suit seeking to have the court certify a class consisting of some 6,000 persons who live in the vicinity of the Defendants' plant. Thereafter, in October of 2002, the parties informed the court that they had preliminarily settled this matter. On November

4, 2002, the court conditionally certified the proposed class and preliminarily approved the parties' settlement. After notice was provided to the class of the proposed settlement, the court held a final fairness hearing on February 4, 2003. Two objectors, Howell Austin and James Trimm, formally objected to the proposed settlement. The total amount of proceeds from the proposed settlement in this case is initially set at $3,250,000, and, depending on the number of claims from class members, could be as high as $7,500,000.

### B. Class Action Settlement Approval

■ Rule 23(c) of the Federal Rules of Civil Procedure provides that "[a] class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." See Fed.R.Civ.P. 23(e). While Rule 23 does not provide a standard for courts to utilize in determining whether a proposed settlement should be approved, the Fifth Circuit has held that class action settlements should be approved only when they are "fair, adequate and reasonable." *Parker v. Anderson,* 667 F.2d 1204, 1208–1209 (5th Cir.1982); *In re Corrugated Container Antitrust Litig.,* 643 F.2d 195, 207 (5th Cir.1981); *In re Catfish Antitrust Litig.,* 939 F.Supp. 493, 496 (N.D.Miss. 1996).

In determining whether a proposed class action settlement is fair, adequate and reasonable, the Fifth Circuit has directed that courts consider the following six factors:

(1) whether the settlement was the product of fraud or collusion;

(2) the complexity, expense, and likely duration of the litigation;

(3) the stage of the proceedings and the amount of discovery completed;

(4) the factual and legal obstacles to prevailing on the merits;

(5) the possible range of recovery and the certainty of damages; and

(6) the respective opinions of the participants, including class counsel, class representatives, and absent class members.

*Reed v. General Motors Corp.,* 703 F.2d 170, 172 (5th Cir.1983); *Parker,* 667 F.2d at 1209; *In re Catfish,* 939 F.Supp. at 496–97. Other relevant factors may also be considered, such as whether the settlement amount is much less than that sought in the complaint, whether a large number of class members object to the settlement, and whether any cogent objections have been raised to the settlement. See Manual for Complex Litigation (Third) § 30.42 (1995); *In re Catfish,* 939 F.Supp. at 497.

### 1. Existence of Fraud or Collusion

The record in this cause contains no evidence that suggests fraud or collusion is involved in any way with the parties' proposed settlement. The court was intimately involved in the long-running and frequently contentious settlement negotiations between the parties in this action and has no reason to believe that fraud or collusion played a role in the negotiations. The objectors do not contend otherwise.

The court therefore finds that all counsel involved vigorously represented the interests of their respective clients, and fraud or collusion is not a factor in the settlement agreement reached by the parties. Application of this factor, therefore, favors approval of the proposed settlement.

### 2. Complexity, Expense and Duration of Case

This case involved allegations of personal injury and property damage stemming from alleged conduct that took place over a

period of some seventy-five years and affected some 6,000 class members. Due to the sheer scope of discovery, the large number of witnesses and the reams of documentary evidence, the court finds that there can be no doubt that this matter was factually complex. In addition, the expense of litigating this case through a trial and appeal would likely be monumental, and the litigation would continue for some length of time.

For these reasons, the court finds that this case was sufficiently complex and expensive, and would have been of such duration, that resolution by settlement was a favorable option for all involved. The objectors do not dispute this. This factor therefore favors approval of the proposed settlement.

### 3. Stage of Proceedings and Discovery

While little formal discovery had taken place in this case, the parties had the benefit of the extensive discovery that took place in the related *Andrews* litigation, which involved near-identical allegations of personal injury and property damage based on the same alleged conduct by the same defendants. In addition, numerous motions had been filed and ruled on in *Andrews,* thereby more firmly establishing a legal framework for litigation of this matter. *See, e.g., Andrews v. Kerr–McGee,* No. 1:00CV158–D–A, 2001 WL 1704144 (N.D.Miss. December 5, 2001) (opinion and order granting Kerr–McGee's motion for partial summary judgment); *Andrews v. Kerr–McGee,* 1:00CV158–D–A, 2001 WL 1704150 (N.D.Miss. December 3, 2001) (opinion and order granting in part and denying in part Defendants' motions for summary judgment).

In light of the related *Andrews* litigation, the court is confident that the parties knew the relative strengths and weaknesses of their respective positions, and that nothing was left to do except proceed through discovery to trial. In addition, the objectors do not oppose the settlement based on this factor. The court finds, therefore, that this factor favors approval of the parties' proposed settlement.

### 4. Probability of Success

Throughout these proceedings, both the Plaintiffs and the Defendants have expressed confidence in their respective positions. Both sides, however, faced risks of uncertain magnitude in proceeding with this litigation. The Plaintiffs faced the prospect that the court would deem some or all of their critical expert testimony inadmissible. If the court so ruled, the Plaintiffs would have received nothing. As for the Defendants, had this case proceeded to trial with the Plaintiffs' expert testimony being admitted, a jury award far greater than the proposed settlement amount may have been awarded. Regardless of which side prevailed at trial, lengthy appeals and expenses could be anticipated. For these reasons, the court is of the opinion, and the objectors do not disagree, that this factor favors approval of the proposed settlement.

### 5. Range of Possible Recovery

The parties' proposed settlement, which has a total value of $7,500,000, provides either $500 or $750 to each class member; up to $2,500 to class members who sell residential property within the class area during the next two years; medical screening of class members for exposure to the alleged contaminants; and attorneys' fees for class counsel. While a jury empaneled to hear this case certainly may have awarded damages in excess of these amounts, it does not appear to the court that a jury would necessarily be likely to do so. Members of the class would face the challenge of proving both personal injury and property damages.

In considering not only the potential provable damages in this suit, but also the possibility of a jury finding no liability on the part of the Defendants, and in contrasting the amount of any potential jury award with the amount offered in the proposed settlement, it is apparent to the court that this factor favors approval of the parties' settlement agreement. No evidence has been offered to the court indicating that the value of the proposed settlement is inadequate in relation to the amount that a jury could have awarded. Under these circumstances, the court concludes that the amount of the settlement, in comparison with the range of potential recovery by jury verdict, supports the fairness, adequacy, and reasonableness of the settlement.

### 6. Opinions of the Participants

#### a. The Objectors

The only persons who do not have a favorable view of the proposed settlement are, to the extent of the court's knowledge, the two objectors to the settlement. As previously noted, these two objectors, the only objectors out of a 6,000 person class, are Howell Austin and James Trimm. They do not object to the settlement as a whole nor do they assert that the principal component of the settlement, the cash payments to class members, is inadequate. Rather, they only object to two portions of the settlement: first, they argue that the medical monitoring portion of the settlement is inadequate; and second, they argue that the Property Value Protection Program, the provision of the settlement compensating class members who sell residential property within the class area during the next two years, is inadequate. After careful consideration of Austin and Trimm's objections, the court finds that their objections—while certainly not frivolous—do not provide adequate grounds for disapproval of the settlement.

The court must consider the settlement as a whole; the court has no authority to modify the individual provisions of the settlement. *Evans v. Jeff D.*, 475 U.S. 717, 726–27, 106 S.Ct. 1531, 1537, 89 L.Ed.2d 747 (1986); *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir.1977). Moreover, the Fifth Circuit has affirmed the fairness of proposed class settlements despite the presence of objections that the settlements failed to provide certain types of relief. *See, e.g., Reed,* 703 F.2d at 174. In any event, in deciding whether the proposed settlement is fair, the court must weigh the benefits of the proposed settlement against the costs and risks of continued litigation, which are significant in this case. *Id.* at 172.

In objecting to the proposed Medical Screening Program, the objectors do not explain why any supposed inherent limitations of the screening render the entire proposed settlement agreement inadequate. Instead, they simply argue that the proposed screening could result in false positive readings (allegedly as a result of simply "having eaten a barbeque sandwich the day before"), thereby causing panic among class members who may not be sick. Alternatively, the objectors argue that the test is unreliable and would not properly detect exposure, thereby giving class members a false sense of security. These objections, whether meritorious or not, do not even render the Medical Screening Program without value, much less do they render the entire proposed settlement unfair, unreasonable or inadequate.

The objectors do not state what type of medical screening should be done; they simply assert that the proposed testing is inadequate. The proposed testing, however, is the testing recommended by the World Health Organization for monitoring exposure to the hydrocarbons contained in

**530**

creosote, and has been widely used to monitor exposure to creosote. Accordingly, the court holds that the objections to the settlement on this basis are without merit.

As for the Property Value Protection Program, the objectors argue that very few class members will benefit, and that the Program may have the side-effect of causing further deterioration of property values in the area if a large number of class members do participate. The objectors provide no evidence for such a conclusion, other than their own speculative statements. In any event, the court finds that the Property Value Protection Program will accomplish exactly what the parties state it will accomplish: it will provide up to $2,500 to any class member who sells residential property in the class area within the next two years. As is the case with the medical screening portion of the settlement, the objectors are seemingly contending that a wholly different settlement should have been negotiated, rather than attempting to show that the actual proposed settlement is not fair, adequate, and reasonable. The court, however, as has been previously noted, has no authority to amend the proposed settlement. As is the case with their objection concerning the Medical Screening Program, the objectors have simply failed to show how the alleged defects in this portion of the settlement render the entire settlement unfair.

Finally, the objectors state that the proposed settlement should be rejected because the settlement "guarantees further litigation." Avoidance of litigation by opt-out class members, while certainly beneficial to the Defendants, is not one of the

factors the Fifth Circuit has directed that courts consider when determining whether a proposed settlement is fair, adequate and reasonable. *See, e.g., Reed,* 703 F.2d at 172; *Parker,* 667 F.2d at 1209; *In re Catfish,* 939 F.Supp. at 496–97. In any event, the objectors have not established how the risk of potential further litigation by opt-out class members renders the proposed settlement unfair. Accordingly, the court finds that this objection to the settlement is without merit.

In sum, the court finds that the objections to the proposed settlement do not constitute sufficient grounds for rejecting the parties' proposed settlement. The Plaintiffs faced enormous expense and the possibility of no recovery if this case proceeded to trial. Further, the objectors do not state that the monetary awards to class members, which form the bulk of the settlement, are insufficient. Accordingly, the objectors' motion to intervene shall be denied.[1] In any event, the court has extended the opt-out deadline for the objectors, and for the objectors only, through April 30, 2003.

b. Opinion of Counsel

In assessing the merits of a class action settlement, the court "is entitled to rely upon the judgment of experienced counsel for the parties." *Cotton,* 559 F.2d at 1330. Here, both the Plaintiffs and the Defendants are represented by highly experienced class action attorneys who have litigated and settled numerous class action lawsuits. At the final fairness hearing, both counsel for the Plaintiffs and counsel for the Defendants expressed their firm belief that, after carefully weighing the benefits of the certainty of settlement ver-

1. The objectors retain the right to appeal this court's approval of the settlement. *See Devlin v. Scardelletti,* 536 U.S. 1, 122 S.Ct. 2005, 2013, 153 L.Ed.2d 27 (2002) (holding that "nonnamed class members ... who have ob-jected in a timely manner to approval of the settlement at the fairness hearing have the power to bring an appeal without first intervening.").

sus the risk of proceeding to trial, the proposed settlement represents a fair, adequate and reasonable resolution to this litigation. This factor, therefore, favors approval of the proposed settlement.

### 7. Conclusion

In light of all of the above factors, the court finds that the parties' proposed settlement agreement is "fair, adequate and reasonable" with respect to the class and should be approved. All six of the relevant factors weigh towards approval of the settlement. Objections to approval of the settlement have been noted, but the court holds that the objections do not have sufficient merit to prevent approval of the settlement agreement. The court shall therefore approve the proposed settlement.

### C. Attorneys' Fees

 Class counsel have filed a separate motion in this case seeking an award of attorneys' fees and expenses, to be paid from the settlement proceeds. A percentage fee approach, as opposed to a lodestar computation, is the preferred method for determining awards of attorneys' fees in common fund, or class action, cases. *Blum v. Stenson,* 465 U.S. 886, 900, 104 S.Ct. 1541, 1550, 79 L.Ed.2d 891 (1984); *In re Catfish,* 939 F.Supp. at 499–501.

In their motion, class counsel requests a fee of 25% of the amount of the settlement fund after expenses. While other courts have adopted varying benchmark numbers, the court finds that the adoption of an initial benchmark percentage of 25% is reasonable, and shall be approved. *See, In re Catfish,* 939 F.Supp. at 501 (adopting 25% benchmark); *In re Shell Oil Refinery,* 155 F.R.D. 552, 573 (E.D.La.1993) (noting most common fund fee awards range between 20% and 30%); *Camden I Condo. Assoc., Inc. v. Dunkle,* 946 F.2d 768, 774 (11th Cir.1991) ("The majority of common fund fee awards fall between 20% and 30% of the fund.").

In order to ensure the reasonableness of the percentage applied, many circuits which apply the percentage method still make application of the lodestar factors enunciated in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974). *See, e.g., Uselton v. Commercial Lovelace Motor Freight, Inc.,* 9 F.3d 849, 853 (10th Cir.1993); *Camden,* 946 F.2d at 775; *In re Catfish,* 939 F.Supp. at 501. While all of the *Johnson* factors are not necessarily relevant under a percentage fee approach, the court is of the opinion that those factors are the most proper standard with which to weigh the reasonableness of a fee award. The twelve *Johnson* factors are:

(1) the time and labor required;

(2) the novelty and difficulty of the questions involved;

(3) the skill required to perform the legal service properly;

(4) the preclusion of other employment by the attorney due to the acceptance of the case;

(5) the customary fee;

(6) whether the fee is fixed or contingent;

(7) the time limitations imposed by the client or the circumstances;

(8) the amount involved and the results obtained;

(9) the experience, reputation, and ability of the attorneys;

(10) the "undesirability" of the case;

(11) the nature and the length of the professional relationship with the client; and

(12) awards in similar cases.

*Johnson,* 488 F.2d at 717–719. Even though the *Johnson* factors must be addressed to ensure that the resulting fee is reasonable, not every factor need be neces-

sarily considered. *Uselton,* 9 F.3d at 854 ("rarely are all the *Johnson* factors applicable; this is particularly so in a common fund case."). Based upon an application and analysis of these factors, the court can make any adjustments necessary to the benchmark percentage rate in order to ensure that a reasonable amount is awarded.

### 1. Time and Labor Required

This litigation began almost three years ago, and has proceeded in a manner not unusual for a case of this magnitude. While a vast amount of work has been put forth by all involved (some 2,500 hours is claimed by class counsel), the expenditure is not surprising in light of the nature of the claims and the facts involved. In light of the fact that this matter was resolved before trial, the court is of the opinion that the magnitude of work required in this litigation is accurately reflected in the nature of an award based upon percentage of recovery, and therefore this factor does not significantly affect the reasonableness of an award in this case. Thus, the court is of the opinion that this factor does not warrant an adjustment to the benchmark in this case.

### 2 and 3. Novelty and Difficulty of the Issues / Skill Required to Perform

While this case did indeed involve factually complex issues due to the inherent nature of this type of litigation, the court does not find that the issues were so novel or difficult as to require an adjustment to the benchmark percentage. Likewise, the court does not find that the skill required of counsel in this litigation was of such a high caliber that any adjustment is warranted.

### 4. Preclusion of Other Employment

Class counsel states that they were precluded from involvement in various contingency suits because of the time and money that was being invested in this case. The court does not dispute these assertions, but counsel has not demonstrated how this reduction of employment in other cases is any greater than would normally be expected from expending time in pursuit of any litigation, nor how any such reduction is not compensated for in light of the sheer size of the proposed settlement. After consideration of class counsel's assertions, the court finds that this factor should not alter the benchmark rate.

### 5. Customary Fee

The court has considered the customary fees that class counsel asserts they charge in similar cases. The court does not find that this factor warrants any adjustment.

### 6. Fixed or Contingent Fee

Class counsel asserts that they undertook representation of the Plaintiffs in this action on a quasi-contingency basis. They shall receive an award based upon a percentage of recovery in any event, and the court does not find that this factor warrants an adjustment to the benchmark rate.

### 7. Time Limitations Imposed by the Client

Because this was a class action suit, this factor has no application. *In re Catfish,* 939 F.Supp. at 502.

### 8. Amount Involved and Results Obtained

The amount of the settlement in this case, $7.5 million, is substantial. Each class member is eligible to receive a cash award and medical screening; in addition, certain class members who sell residential property within the class area will be eligible for an additional cash payment. Importantly, no class member is required to waive the right to sue for unmanifested personal injuries. While the court, as not-

ed above, is satisfied that these results are fair, adequate and reasonable, the court does not find that these results warrant an adjustment of the benchmark rate.

### 9. Experience/Reputation/Ability of Attorneys

In the court's opinion, all of the attorneys involved in this case have zealously represented their respective clients' interests, and the court is satisfied with their performance. Many of the attorneys have national reputations within the class action and mass tort arena, and have lived up to their name. Nevertheless, the court does not find that this factor sufficiently warrants an adjustment of the benchmark percentage in this case.

### 10. Undesirability of the Case

Ultimately, the court finds that this case was no more undesirable than any other case of comparable magnitude. While cases may become less desirable to some degree as they increase in size and complexity, they also usually increase simultaneously in terms of potential reward on a contingency basis. In that the size of potential recovery was heightened proportionately to the magnitude of the work involved, the court does not find that any adjustment is necessitated by this factor.

### 11. Nature/Length of Professional Relationship With the Client

As is undisputed by class counsel, this factor has no application in the court's analysis.

### 12. Awards in Similar Cases

As previously noted by the court, courts typically set the benchmark for attorneys' fees between 25% and 33% of the settlement amount. *See, e.g., In re Coordinated Pretrial Proceedings in Petroleum Prod. Antitrust Litig.,* 109 F.3d 602, 607 (9th Cir.1997) ("common fund fees commonly range from 20% to 30% of the fund created, and ... 25 percent has been a proper benchmark figure."). In light of these and other decisions considered by the court, the finds that the 25% benchmark is well centered within the range of fees normally awarded in common fund cases. No adjustment shall be made for this factor.

### 13. Costs

In addition to an award of attorneys' fees, class counsel seeks recovery of costs in this action in the amount of $148,515.71. The court has carefully reviewed the itemizations of costs provided to the court, and finds them reasonable under the circumstances of this litigation. As such, finding no reason to determine that the asserted costs are unreasonable, the court will award the full amount requested.

### 14. Final Calculation of Fees and Costs

Upon due consideration of all of the *Johnson* factors, the finds that a final adjustment of the benchmark rate need not be made. Many factors which might have more effect in a case where the lodestar approach was used are less important here, where the very nature of a percentage recovery encompasses many of the concerns that these factors address. In addition, the court notes that no formal objections have been filed by class members to the amount of attorneys' fees sought by class counsel. The court therefore finds that the 25% benchmark rate should not be adjusted—its straight application will result in a reasonable fee for class counsel.

In light of the determinations previously made by the court, the court finds that 25% of the settlement fund minus expenses is an appropriate benchmark; this results in an attorneys' fee award of $1,837,871.[2] *See, e.g., Boeing v. Van Gemert,* 444 U.S. 472, 478, 100 S.Ct. 745, 749, 62 L.Ed.2d 676 (1980) (holding that class

---

**2.** The settlement fund of $7,500,000 minus

$148,515.71 in expenses leaves a net settle-

counsel are entitled to fee award based on amount of funds potentially to be claimed by class members, regardless of amount actually claimed by class members); *Waters v. International Precious Metals Corp.,* 190 F.3d 1291, 1294–98 (11th Cir. 1999).

The award of attorneys' fees in this case is in an aggregate amount, with distribution among the various firms and attorneys to be made by agreement among class counsel. *Longden v. Sunderman,* 979 F.2d 1095, 1101 (5th Cir.1992) ("The district court acted well within its discretion in awarding an aggregate sum ... leaving apportionment of that sum up to the ... attorneys themselves."). In the event that class counsel cannot agree to an equitable distribution between themselves, the court can then appoint a Special Master, paid from the corpus of the attorneys' fees award, to make both a report to the court and recommendation as to how the funds should be distributed.

### D. Conclusion

After careful consideration of all the relevant factors, the undersigned is of the opinion that the settlement agreement between the Plaintiff class and the Defendants in this case is "fair, adequate and reasonable" and should be given final approval. Further, the court has calculated a reasonable attorneys' fee to be awarded to class counsel, in the base amount of $1,837,871. Finally, class counsel's request for an award of costs shall be granted, in the base amount of $148,515.71.

A separate order in accordance with this opinion shall issue this day.

### ORDER APPROVING CLASS SETTLEMENT

Pursuant to a memorandum opinion issued this day, it is hereby ORDERED THAT:

1) the parties' joint motion for final approval of the settlement in this case (docket entry 66) is GRANTED, and the settlement is hereby APPROVED;

2) class counsel's motion for an award of attorneys' fees and costs (docket entry 67) is hereby GRANTED in the aggregate amounts of $1,837,871.00 for attorneys' fees and $148,515.71 in costs. These awards shall constitute the full award of attorneys' fees and expenses, and no additional amounts shall be awarded to class counsel;

3) Howell Austin and James Trimm's motion to intervene (docket entry 69) is DENIED;

4) the Plaintiffs' previously pending motion to certify class (docket entry 41) is DENIED AS MOOT; and

5) class counsel are hereby given until May 15, 2003, to notify the court that they have reached a binding agreement as to the distribution of the awards of attorneys' fees and costs to individual law firms and attorneys. In the event that class counsel fail to provide such notice of an agreement to the court, the court shall set a date for a hearing on the issue and for the appointment of a Special Master pursuant to Federal Rule of Civil Procedure 53. In the event that a Special Master need be appointed, compensation for the Special Master shall be paid from the corpus of the attorneys' fees award.

ment amount of $7,351,484.30. Twenty-five percent of $7,351,484.30 is $1,837,871.00.