United States Court of Appeals, Fifth Circuit.

Nos. 91–1592, 91–7028 and 92–1474.

Larry L. and Patricia A. LONGDEN, et al., Plaintiffs,

v.

Jeffrey S. SUNDERMAN, et al., Defendants.

Deborah R. MASSIE, A.P.C. and Approximately 1008 Class Plaintiffs, Appellants,

v.

SUSMAN GODFREY, Burleson, Pate & Gibson, Furth, Fahrner & Mason, Much, Shelist, Freed, Denenberg, Ament & Eiger, P.C. and Schall, Boudreau & Gore, Appellees.

Dec. 28, 1992.

Appeals from the United States District Court for the Northern District of Texas.

Before BROWN, GARWOOD and DeMOSS, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

## PROLOGUE

Appellant, Deborah R. Massie (Massie), on behalf of herself and some 1008 class plaintiffs, appeals from a district court judgment awarding attorneys' fees to Appellees (Susman Attorneys) in this securities fraud and RICO class action settlement. At the district court level, Massie submitted a fee petition, and, after the district court ruled against her, filed motions to reconsider the rulings. The key issue that Massie raises on appeal is whether the district court abused its discretion in granting the Susman Attorneys' joint petition for attorneys' fees and their motion for payment of attorneys' fees. We affirm the district court's judgment.

## HOW IT ALL BEGAN

This case is the classic situation where a small law firm, Massie & O'Brien, A.P.C., later Deborah R. Massie, A.P.C. (Massie) having initiated, with the assistance of a local counsel, Boyd & Fults (Boyd) multiple, individual actions against common defendants, found the ensuing litigation too complex to handle, joined larger, specialized firms, Much, Shelist, Freed, Denenberg, Ament & Eiger, P.C. (Much), Susman Godfrey, L.L.P. (Susman), Furth, Fahrner & Mason (Furth), Burleson, Pate & Gibson (Burleson), and Schall, Boudreau & Gore (Schall) (altogether, including Massie, Class

Counsel) to salvage the lawsuits. Upon conversion of the litigation by these firms into a class action and upon their negotiation of a successful settlement, Massie sought payment of attorneys' fees, including costs and expenses, for time and resources expended prior to the larger firms' involvement.

From October 1986 to June 1987, Massie, representing 1008 plaintiffs, filed 93 individual actions in United States District Court for the Northern District of Texas against Jeffrey Sunderman and several corporate entities which he controlled in the syndication of 114 limited partnerships (altogether Sunderman). In the same suit, Massie also filed against attorneys who assisted in formation of the partnerships (the Linde defendants), and against accountants, including Arthur Andersen, who assisted in forming the partnerships (the Anderson defendants) for securities fraud and RICO violations in connection with the sale of interests in the Sunderman partnerships.[1] In March 1987, the district court urged Massie and Boyd to convert the case to a class action. They responded with a written opposition to conversion, arguing that the factual prerequisites to class certification under F.R.Civ.P. 23 were nonexistent and that neither counsel nor plaintiffs contemplated conducting or funding litigation on a large scale.[2]

In the summer of 1987, one of the individual plaintiffs, also a Much client, asked Much to investigate the status of the litigation. Much contacted Susman, and the two firms concluded that the case should be converted to a class action. After discussion with Massie, Much and Susman agreed to enter into the litigation and to convert the case to a class action.[3]

In December 1987, Massie, Much and Susman filed a motion for leave to file a class action complaint on behalf of Longden et al.[4] Because discovery deadlines had lapsed in several of the individual actions due to the Massie and Boyd firms' negligent handling of the cases, Much and

---

[1]Massie had one-third contingency fee agreements with plaintiffs and collected a non-refundable $500 retainer from each plaintiff, amounting to approximately $492,600. Record V. 8, p. 30 & 138–39 (Unless indicated otherwise, all citations to the Record refer to 91–1592).

[2]Record V. 10, p. 61–71.

[3]Record V. 6, p. 3–4.

[4]Class plaintiffs are three marital couples that had pending actions and another marital couple that had no pending action and had not retained Massie. Record V. 1, p. 173–74.

Susman assisted Massie from 1987 to early 1988 in defending several motions to dismiss for discovery violations. The Susman Attorneys did not contest most of Massie's time spent after entry of Much and Susman.

In January 1988, the district court granted leave to file a class action. At this time, Craig Zafis, the member of the Massie firm who had principally handled the litigation, left Massie and joined Schall, but remained involved in the case. It is not contested that Massie's involvement in the class action from this point on was other than *de minimus.*

In 1989, the Linde defendants settled for $7 million. On May 1, 1990, the district court denied Andersen's summary judgment motion for dismissal due to lapse in discovery as to 77 of the 114 partnerships and granted summary judgment against plaintiffs in 37 of the partnerships. *Longden v. Sunderman,* 737 F.Supp. 968 (N.D.Tex.1990).

The Andersen defendants settled on March 5, 1991 for $19.2 million plus interest.[5] In mid-March, Class Counsel mailed court notice concerning a hearing on approval of the settlement to all class plaintiffs and published the notice in the *Wall Street Journal.*[6] Based on Susman, Much and Furths' review of all Class Counsels' time and expense records, the Susman Attorneys filed a joint petition for fees benefitting the class as a whole. Massie disagreed with the other firms' calculations and filed what she characterized as her own fee petition. Included in the court notice was the requirement that for the court to hear objections to the settlement or fee petitions, the parties must submit written objections by April 15, 1991.[7] The Susman Attorneys filed a written objection to Massie's fee petition; however, no one filed a written objection to the Susman Attorneys' petition.

Massie appeals from the district court judgment awarding (1) the full amount requested by the Susman Attorneys' petition, that is 27.5% of both the Andersen and Linde Settlement funds, to Class Counsel, excluding her firm, and (2) 40% of her requested fee, based on a finding that her

---

[5]The Andersen Settlement compensated 23.5% of the actual economic loss due to Sunderman investments. Attorneys' fees were to constitute a maximum of 27.5% of the $19.2 million.

[6]Record V. 2, p. 478, 484 & 487.

[7]Record V. 2, p. 490.

efforts constituted only a 40% benefit to the class. Massie's total fee award was $260,000.[8]

Massie sought compensation for its time and expenses as a firm, and, in addition, reimbursement on behalf of all its individual clients for the $492,600 that they had paid to Massie as a retainer when they employed Massie to prosecute their individual actions. Massie argues that the district court erred by applying, or applying incorrectly, the incorrect standard when evaluating the competing fee petitions.

Lodestar or Percentage of Recovery

This circuit utilizes the "lodestar method" to calculate attorneys' fees.[9] *Copper Liquor, Inc. v. Adolph Coors Co.,* 684 F.2d 1087, 1092 (5th Cir.1982). The "lodestar" is computed by multiplying the number of hours reasonably expended by the prevailing hourly rate in the community for similar work. *Id.* The court then adjusts the lodestar upward or downward depending on the respective weights of the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974).[10] The district court must explain how each of the *Johnson* factors affects its award, regardless of their specific factual significance; and "while the subsidiary fact findings are reversible only if clearly erroneous ... review of the total fee is [governed] by the precept that its amount lies in the trial judge's discretion, and is to be *recalculated only if that discretion is abused." Copper Liquor,* 684 F.2d at 1092, 1094 (emphasis added).

---

[8]The district court ruled that $197,500 of Massie's $260,000 award was to be reimbursed to the original plaintiffs for their retainer to Massie, because 40% of the $492,600 total retainer benefitted the class as a whole. Massie's final fee was $63,000.

[9]Although the prevailing trend in other circuits and district courts has been towards awarding fees and expenses in common fund cases based on percentage amounts, the Fifth Circuit has yet to adopt this method. The following cases hold that a percentage award is proper: *Paul, Johnson, Alston & Hunt v. Graulty,* 886 F.2d 268, 271 (9th Cir.1989); *Brown v. Phillips Petroleum Co.,* 838 F.2d 451, 454 (10th Cir.1988); *Bebchick v. Washington Metro. Area Transit Comm'n,* 805 F.2d 396, 406 (D.C.Cir.1986); *Howes v. Atkins,* 668 F.Supp. 1021, 1024 (E.D.Ky.1987); and *In re SmithKline Beckman Corp. Sec. Litig.,* 751 F.Supp. 525, 533 (E.D.Pa.1990).

[10]The *Johnson* factors are as follows: (1) time and labor required, (2) novelty and difficulty of the issues, (3) skill required to perform the legal services properly, (4) preclusion of other employment, (5) customary fee, (6) whether the fee is fixed of contingent, (7) time limitations imposed by the client or the circumstances, (8) amount involved and results obtained, (9) experience, reputation and ability of the attorneys, (10) undesirability of the case, (11) nature and length of the professional relationship with the client, and (12) awards in similar cases. *Johnson,* 488 F.2d at 717–19.

Massie contends that the district court abused its discretion by evaluating the Susman Attorneys' fee petition differently than the Massie fee petition and by making its determination without substantial factual support in the record. Specifically, Massie argues that although the court used the lodestar method to some extent in evaluating her fee petition, the court erred by not using this method in evaluating the Susman Attorneys' petition.

It is clear from the district court's discussion, however, that it had reviewed all of the relevant time and expense records before arriving at its conclusions, and that it discussed each *Johnson* factor when it ruled on the fee issue.[11] Not only did the district court use the proper standard in evaluating and determining attorneys' fees, its findings of fact were sufficiently based on record evidence.

For example, in reducing Massie's requested fee of $651,582 by 60%, the district court pointed out that the individual cases as handled by Massie and Boyd prior to the entry of Much and Susman had been handled more ineptly than any litigation in that court since that district court judge came on the bench in 1979. Considering that Massie originally opposed class certification and was ultimately responsible to her clients for allowing discovery to lapse, which resulted in near dismissal of several claims, the 40% award, or 60% reduction, was, as the court noted, generous.

Massie, herself, acknowledged at the May 1, 1991 hearing that prior to Much and Susman's involvement the case was a "litigation abyss."[12] Moreover, in her fee petition, Massie admitted that most of her claimed time excluded by the Susman Attorneys' evaluation did not provide a benefit to

_____

[11]Transcript of Proceedings (May 1, 1991) at 72–82. That the district court also calculated fees on a percentage of the total recovery basis merely demonstrated its preference for that method as a matter of policy. "... [T]he question in the circuit is as to whether or not a percentage fee will stand up or is the circuit still controlled by the *Johnson* factors. I'm going to address it both ways." Transcript of Proceedings (May 1, 1991) at 77. Using the percentage rule, the district court concluded that it was generous to say that 40% of the amount which Massie sought as a lodestar fee would conceivably benefit the class. *Id.* at 82. Using the *Johnson* factors, the district court adjusted Massie's lodestar figure of $651,582 downward by 60% based upon its observation that Massie mishandled the litigation prior to the involvement of Much and Susman. *Id.* at 82–85. Using either method, the district court arrived at a final dollar amount of $259,554.

[12]Record V. 8, p. 4.

the class as a whole.[13]

Massie also argues that the district court erred when it awarded a percentage amount to the Susman Attorneys and then excluded her firm from this award. The record shows, however, that the district court, based on its review of all counsels' records, apportioned an aggregate award amounting to 27.5% of the total amount recovered by all petitioners, including Massie, based on its discretionary application of the *Johnson* factors. This apportionment took the form of awarding a single sum to the Susman Attorneys and another sum to Massie.[14] Thus, the district court's award of attorneys' fees and expenses to Furth and Schall, which entered the litigation after the entry of Much and Susman, was entirely proper and supported under law and facts. The district court acted well within its discretion in awarding an aggregate sum to the Susman Attorneys that was based on their collective efforts, leaving apportionment of that sum up to the Susman Attorneys themselves. *See In re Agent Orange Prod. Liab. Litig.,* 818 F.2d 216, 223 (2d Cir.1987) ("There is authority for a court, under certain circumstances, to award a lump sum fee to class counsel under the equitable fund action under the lodestar approach and then to permit counsel to divide this lodestar-based fee among themselves under the terms of a private fee sharing agreement.").

The district court adequately explained the findings and reasons upon which its award was based, including an indication of how each of the *Johnson* factors affected its decision. Because the district court's findings are amply supported by the record, the district court did not abuse its discretion.

## Issue of Expenses

Massie's appeal also involves the $492,600 retained by Massie and used as a litigation fund to cover expenses in the individual actions. In her fee petition, Massie requested that this entire

[13]In evaluating the amount of Massie's time which benefitted the class as a whole, class counsel came to a lodestar of $259,554. Massie's evaluations resembled a moving target including at least the following variations: (1) a $504,333 lodestar with a 1.55 multiplier, for a total fee award of $790,584; (2) a $259,544 lodestar with a 1.55 multiplier, plus 25% of the amounts recovered by her 1008 clients out of the common fund, minus the $492,600 total retainer; (3) $321,323 plus the right to seek additional compensation out of the amounts that her 1008 clients recovered from the settlement fund; and (4) a flat $562,361 fee. Record V. 8, p. 27 & V. 4, p. 830, 883.

[14]Record V. 4, p. 827–28.

amount be reimbursed to its individual clients as having benefitted the class. The district court, exercising its discretion, adopted the Susman Attorneys' recommendation that because the court had concluded that 40% of Massie's lodestar arguably benefitted the class, a similar 40% of the $492,600 in expenses would fairly be due Massie as benefitting the class. The court's adoption of this recommendation resulted in a reimbursement of $197,500 to Massie's 1008 plaintiffs.

In her second bite at the apple, a Motion to Reconsider that Massie submitted after the May 1, 1991 hearing, Massie included additional material ostensibly supporting her request for reimbursement of expenses. At oral argument, this court asked Massie to provide post argument a final comment on how, if at all, the $492,600 conferred a benefit on the class. In her third bite at the apple, the September 4, 1992 letter, Massie simply rehashed arguments already made to the district court. Massie herself admits that no more than $344,209 could have benefitted the class. This amount includes $105,760 paid to her firm and $109,262 paid to Boyd. Both of these fees appear as a line item entry without any accompanying time records. The absence of any time records to support the amount demanded alone would justify the district court's discretionary denial of the request for compensation from the common fund. *Copper Liquor, Inc. v. Adolph Coors Co.,* 684 F.2d 1087, 1094 (5th Cir.1982).

Of the nearly $130,000 remaining, about $60,000 consists of copying expenses and about $18,000 consists of "Travel—Documents/Witness Stmts." September 4, 1992 Letter at 4 & 6. The district court acted within its discretion in concluding that these expense items were unsupported. Massie's September 4 letter does not contain any more enlightening documentation. Moreover, Massie received $42,079 in expense reimbursement from the Linde Settlement, but Massie does not acknowledge this reimbursement in her fee petition, Motion for Reconsideration or September 4 letter.

But even assuming, *arguendo,* that the district court ought to have considered such after-the-fact estimates, it is well settled that "[s]ervices rendered for the individual claims of named plaintiffs ... [cannot] be compensated from funds belonging to the class." *Parker v. Anderson,* 667 F.2d 1204, 1214 (5th Cir.1982), *cert. denied,* 459 U.S. 828, 103 S.Ct. 63, 74 L.Ed.2d 65 (1982).

Both Massie and Boyd opposed class certification, and the district court emphasized that such action delayed by at least a year and a half the filing of the Class Action Application. Thus, the district court was acting solidly within its discretion in ruling on expenses.

Massie relies entirely on the Third Circuit decision in *Dunn v. H.K. Porter Co.,* 602 F.2d 1105 (3d Cir.1979), but that opinion is not binding upon this court, and, moreover, is entirely consistent with the district court's order in this case. Unlike Massie, counsel in *Dunn* filed a class action and were responsible for litigating it to a successful settlement. Also unlike the instant case, in *Dunn* no questions were raised or negative findings entered concerning counsel's competency.

Because Massie failed adequately to support her representation that the $492,600 litigation fund benefitted the class as a whole, the district court clearly acted within its discretion in reducing that figure by 40% and ordering the resulting $197,000 to be paid pro rata to Massie's clients out of Massie's $260,000 award for fees and expenses.

## No Continuance

Massie also argues that the district court denied her the right to conduct discovery in connection with the May 1, 1991 hearing, but the record is quite different. Despite sufficient notice of the May 1 hearing, Massie failed to serve any written discovery requests, notice any depositions, or file any written request seeking a continuance of the May 1 hearing so that additional time would be awarded to conduct discovery. Even though Massie contends that such a request was made orally at the May 1 hearing, review of the transcript reflects that Massie requested only that a continuance be granted in order that an evidentiary hearing could be held.[15] Because the May 1 hearing was noticed as, and in fact constituted an evidentiary hearing, the district court properly denied Massie's request.

## Rule 60(b) Motion

Continuing in her numerous and unsuccessful challenges to the May 1 fee order, Massie filed

---

[15]Transcript of Proceedings (May 1, 1991) at 66.

a Rule 60(b) motion on August 15, 1991.[16]  The district court denied this motion in a detailed opinion

set forth in Record on Appeal (91–7028), V. 2, p. 288–302.  Rule 60(b) provides, in relevant part:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:  ...
>
> (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether heretofore determined intrinsic of extrinsic), misrepresentation, or other misconduct of an adverse party;  ....

FRCP 60(b).

Newly Discovered Evidence—Rule 60(b)(2)

Massie alleged the existence of an agreement between herself and the Susman Attorneys

guaranteeing her complete reimbursement for all time and expenses prior to institution of the class

action.  To support this claim Massie offered several interoffice memoranda from Mr. Zafis to herself,

her own allegations and the affidavit of a class plaintiff in one of the original individual actions.

A motion under this rule is an extraordinary motion, and the requirements of the rule must

be strictly met.  *Ag Pro, Inc. v. Sakraida,* 512 F.2d 141, 143 (5th Cir.1975), *rev'd on other grounds,*

425 U.S. 273, 96 S.Ct. 1532, 47 L.Ed.2d 784 (1976).  The newly discovered evidence must be in

existence at the time of trial and not discovered until after trial.  *Id.*  In addition, the evidence must

not be cumulative, must be material and must be such that a new trial would probably produce a

different result.  *Id.*

It is undisputed that the evidence offered by Massie was in her files prior to the May 1

---

[16]In denying Massie's Rule 60(b) motion, the district court expressed a dim view of her apparent strategy to litigate the matter of her attorney's fees "into the next century":

> ... This [Rule 60(b) ] motion follows Massie's May 9, 1991 motion for reconsideration of the May 1 order;  Massie's two appeals of May 30, 1991;  Massie's July 15, 1991 motion for disqualification based on the alleged bias of the presiding judge against women;  Massie's July 23, 1991 notice of appeal of the Attorney's Fee Order of July 15, 1991;  Massie's July 25, 1991 application for stay and approval of supersedeas bond;  and Massie's July 25, 1991 motion for an immediate stay.

Record on Appeal (91–7028), V. 2, p. 288 & 290.

hearing.[17]   This fact alone is enough to deny the motion.  *Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.,* 549 F.2d 368, 391 (5th Cir.1977);  *Johnson Waste Materials v. Marshall,* 611 F.2d 593, 598 n. 9 (5th Cir.1980) (distinguishing between evidence newly discovered and evidence merely newly produced).

Moreover, it is apparent that the district court was within its discretion in finding that Massie did not exercise due diligence in discovering the evidence.  Massie claimed that a 25 day search after the May 1 hearing finally produced the evidence, but due diligence before the hearing must be shown. *Cf. Washington v. Patlis,* 916 F.2d 1036, 1039 (5th Cir.1990) (finding lack of due diligence where party was aware of witness prior to trial but neither moved for a continuance to locate witness nor attempted to find her by doing more than make a telephone call).

Finally, the district court properly concluded that the evidence was not material, in addition to being unsubstantiated, because it is the court, not Class Counsel, who is the final judge of the appropriate fee.  That the district court determined existence of the evidence at the May 1 hearing would not have produced a different result is a valid and proper use of its discretion.

Fraud, Misrepresentation or Other Misconduct—Rule 60(b)(3)

A Rule 60(b)(3) assertion must be proved by clear and convincing evidence, and the conduct complained of must be such as to prevent the losing party from fully and fairly presenting its case or defense.  *Rozier v. Ford Motor Co.,* 573 F.2d 1332, 1339 (5th Cir.1978).  Massie asserts that she submitted documentary evidence to the district court showing that certain Susman Attorneys' testimony was false, and that the court failed to directly address whether the judgment was obtained by perjury.  Specifically, Massie alleges that the named Susman Attorneys falsely denied making any representations to her that they would support reimbursement of all of her pre-class fees and expenses.  The district court, after full review of the exhaustive argument and record on this issue, concluded that the evidence "... even when viewed in the light most favorable to Massie, simply fails to show that any agreement by which [the Susman Attorneys] agreed to support [Massie's] fee petition for pre-class time was an agreement by [the Susman Attorneys] that they would support *all*

---

[17]Record on Appeal (91–7028), V. 2, p. 294.

pre-class time claimed by [Massie], regardless of whether that time benefitted the class."[18] Upon thorough examination of the entire record, including what Massie characterized as credible evidence for her Rule 60(b) motion, this court agrees with the district court's finding of no clear and convincing proof of perjury. Thus, it was well within the district court's discretion to conclude that the evidence proffered by Massie simply was not credible.

### Distribution of Award

Since this court finds the May 1, 1991 order on attorneys' fees valid, Massie's appeal of the July 15, 1991 order authorizing the distribution of funds is without merit, and, therefore, need not be addressed.

Furthermore, in light of our ruling that the district court did not abuse its discretion in determining attorneys' fees and expenses, Massie's remaining arguments are without merit.[19]

### CONCLUSION

The district court was in a unique position to observe this case from start to finish, and it could properly include observation of the performance by all counsel, including Class Counsel. The district court made adequate findings under *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974) to support its fee award to the different attorneys in this case, and it has not abused its discretion in so doing. For the reasons discussed above, the district court's judgment was correct.

AFFIRMED.

---

[18]Record on Appeal (91–7028), V. 2, p. 299.

[19]Massie's remaining arguments are: (1) the district court abused its discretion in invalidating the Massie firm's contingency fee agreements; (2) the district court violated the express terms of the Andersen settlement by allocating attorneys' fees; (3) the district court erred in not conducting a full hearing on the issue of attorneys' fees; and (4) the district court abused its discretion in not allowing the Massie firm a continuance pursuant to the May 1, 1991 hearing.