REVISED February 28, 2008

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 4, 2008

Charles R. Fulbruge III
Clerk

No. 07-30384

IN RE: HIGH SULFUR CONTENT GASOLINE PRODUCTS LIABILITY
LITIGATION

-----------------------------------------------------------------------------------------------------------------

FRANK A. SILVESTRI, JOHN P. MASSICOT, SILVESTRI & MASSICOT,
PETER D. DERBES, STEPHEN B. MURRAY, STEPHEN B. MURRAY, JR.,
MURRAY LAW FIRM, CARROLL FARMER

                                                            Appellants

v.

JOHN W. (DON) BARRETT, RICHARD J. ARSENAULT, WALTER C.
DUMAS, PATRICK E. GERAGHTY, BEN BARNOW

                                                            Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana, New Orleans

Before JONES, Chief Judge, and REAVLEY and SMITH, Circuit Judges.

EDITH H. JONES, Chief Judge:

Lead Plaintiffs' Counsel in this class action case persuaded the district
court to divide up a $6.875 million lump sum attorneys' fee award among more
than six dozen plaintiffs' lawyers according to Lead Counsel's proposed

allocation. This might be permissible, except that the court was so persuaded in an ex parte hearing and apparently without benefit of supporting data. The court further accepted Lead Counsel's proposed order sealing the individual awards; preventing all counsel from communicating with anyone about the awards; requiring releases from counsel who accepted payment; and limiting its own scope of review of objections to the allocation. These and other facets of the court's process are unauthorized and objectionable. Pursuant to the appeal of attorneys who challenged their awards, we VACATE the order approving the allocation and REMAND.

## I. BACKGROUND

During 2004, Shell Oil Co.'s Norco, Louisiana refinery allegedly produced contaminated gasoline that was purchased and used by thousands of motorists, damaging, inter alia, their fuel gauges. The consumers filed numerous lawsuits against Shell, which were consolidated in a federal class action. Before a settlement was reached, Shell undertook a program to repair motorists' broken fuel gauges.

In September 2005, Shell agreed to settle the class action by expanding its voluntary repair program, paying $3.7 million to cover general damages for plaintiffs who filed repair claims, and setting aside $6.875 million to pay the plaintiffs' attorneys' fees, costs, and expenses. After a final fairness hearing, the district court approved the settlement and the aggregate attorneys' fee award.

When the court approved the attorneys' fee award, which was unobjected to, it also appointed a five-member Fee Committee to allocate the fee award among approximately thirty-two law firms and seventy-nine plaintiffs' attorneys who worked on the case. The committee consisted of co-lead counsel, John Barrett and Ben Barnow, and three other plaintiffs' attorneys, Walter Dumas, Patrick Geraghty, and Richard Arsenault ("Appellees"). The court's final approval order stated that any dispute concerning the fee allocation would be

subject to its exclusive jurisdiction.

The Fee Committee then invited plaintiffs' attorneys to submit statements (a) explaining their contributions to the common benefit of the class and (b) evaluating the contributions of other attorneys. It appears that the Fee Committee already possessed the attorneys' time and expense statements because co-lead counsel had requested these statements around August 2005, presumably to help calculate the aggregate attorneys' fee award for the class action settlement. The record on appeal, however, does not include the time and expense statements of any plaintiffs' counsel except those of Appellants Frank Silvestri, John Massicot, Peter Derbes, Stephen Murray, Stephen Murray, Jr. ("Appellants"), and Ronnie Penton.[1]

The Fee Committee presented its proposed fee allocation to the district court on January 22, 2007 at an ex parte status conference. None of the other seventy-four plaintiffs' attorneys, including Appellants, were notified of the hearing, nor were they shown the allocation proposal or the proposed order approving the Committee's allocation of fees and costs

Also unbeknownst to the other attorneys, the proposed order went far beyond the allocation of fees. The order (a) placed under seal the document prepared by the Fee Committee listing each attorney's fee award ("Exhibit A"); (b) prohibited each plaintiffs' attorney from disclosing to anyone, including his clients and other attorneys, the amount of his award under penalty of sanctions to be imposed by the court; (c) required fees, costs, and expenses to be "distributed immediately;" (d) mandated that fee award checks bear a full and final release;[2] and (e) established the district court's process for dealing with any

---

[1] Ronnie Penton initially objected to his fee allocation but he later withdrew his objection.

[2] The court's order stated: "Funds will be distributed immediately and will include the following language: 'In complete satisfaction of all attorneys' fees, costs, and expenses claimed due and owing as a result of or pursuant to In Re High Sulfur Content Gasoline Products

objections to fee awards.[3]

The transcript of the ex parte hearing and the court's fee allocation order suggest that the Fee Committee provided the court with documentation to support its recommendation. For example, the district court stated during the ex parte hearing that it had received "each individual attorney's responses." The court also indicated that the Fee Committee had given the court "material" in connection with the hearing. Further, the order states the court was "provided with the documentation submitted as well as a report" from the Fee Committee. Contrary to these vague statements, the record on appeal includes no "responses" from any attorneys other than Appellants, and it lacks any "material," "documentation," or "report" from the Fee Committee other than Exhibit A and the proposed order.

At the ex parte hearing, the district court asked the Fee Committee why it wanted the court to seal the fee allocation list. Barrett responded that keeping the individual fee awards confidential would prevent lawyers from fighting over awards that they could not compare. He asserted that during the past ten to fifteen years other judges have "go[ne] with this confidentiality dynamic." Barrett specifically cited another federal district court in Louisiana that had recently placed under seal the fee allocation list associated with its order

---

Liability Litigation, MDL 1632, and all other claims, if any, of the payee, and their successors and assigns, related in any way thereto.'"

[3] The court's order stated: "Should there be any appeal or objection, the Court will entertain those de novo. If the Court determines any adjustment is warranted, the award may be decreased or increased depending on the specific factual circumstances and based on the Court's review of individual issues related solely to that award and their relation to common benefit based on factors noted herein, and not based on any comparison to other awards. If any adjustments are made anyone having previously accepted their individual allocation will be subject to a pro rata adjustment, i.e., proceeds may have to be returned to fund increases or there may be additional payments if awards are decreased."

awarding individual attorneys' fees.[4]

The district court also asked the Fee Committee about the process it used to make its fee allocation recommendations. Arsenault and Barrett responded that the Fee Committee considered, among other things, the benefits of the attorneys' work to the class as a whole and their hourly billing rates. Barrett highlighted two firms whose recommended fee allocations were lower than their requests. He asserted that these firms "really . . . didn't do anything for the common benefit and caused us trouble and caused the plaintiffs almost killing the settlement." Barrett was referring to the Appellants, Silvestri and Derbes, who "almost killed the settlement" by sending a letter to their clients about the proposed settlement that caused 101 of them to opt-out. Barrett did not point out that this situation had been resolved by sending a curative notice to these clients, and most of them ultimately chose not to opt-out of the settlement.

Pertinent to the Murray Appellants, Barrett said nothing explicit but left the district court with the impression that all plaintiffs' firms other than Silvestri's and Derbes's had received compensation based on the hours and hourly billing rates they submitted to the Fee Committee and a multiplier. Barrett's implication was inaccurate, however. The Murray firm received a fee check for $33,000, inclusive of costs, a sum representing far less than the $114,310 fee the firm claims based on its hours, billing rates, and a multiplier of 2.3.

The hearing with the Fee Committee lasted only twenty minutes. At the end of the hearing, the court sealed the hearing transcript. Later on the same day, the district court signed — apparently without modification — the proposed order embodying both the proposed attorneys' fees and the procedural limitations on challenges. The order awarded almost half of the $6.875 million fee to the five members of the Fee Committee and their law firms. Appellants were awarded

---

[4] See In re Eunice Train Derailment, No. 6:00-CV-1267 (W.D. La. March 29, 2005) (order awarding attorneys' fees).

less than they had requested.  Soon thereafter, Appellants requested the district court to reconsider its order and unseal Exhibit A, the fee allocation list.

The court held an in camera hearing on these motions at which Appellants and members of the Fee Committee presented oral arguments on March 16, 2007. At the hearing, the court stated that it considered all of the factors set forth in Johnson v. Georgia Highway Express, 488 F.2d 714 (5th Cir. 1974),[5] with regard to each attorney when it approved the fee allocation.  The court later sealed the docket minute entry for the hearing and the hearing transcript  It also entered a sealed order allowing the parties to file supplemental memoranda and requiring the Fee Committee and the Appellants to meet and report back to the court.

On April 5, 2007, the court entered a sealed order denying the motions to reconsider and refusing to unseal Exhibit A.  Appellants Silvestri, Massicot, Derbes, Murray, and Murray, and Carroll Farmer, a class member, filed a notice of appeal.[6]  The district court subsequently entered orders unsealing Exhibit A and various other documents.  This court granted Appellants' motion to instruct the district court to supplement the record on appeal with all documents and submissions reviewed by the district court prior to making its fee allocation order.[7]

---

[5] The Johnson factors are: (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the political "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  488 F.2d at 717-19.

[6] The Times-Picayune, a New Orleans based daily newspaper, also appealed the district court's order denying Appellants' motion to unseal the fee allocation list.  However, the Times-Picayune was granted leave to dismiss its appeal following the un-sealing of Exhibit A.

[7] Appellants' time and expense statements and letters to the Fee Committee, the only documents of their kind in the record, were  entered into the district court record in July 2007

## II. STANDARD OF REVIEW

This court reviews a district court's attorneys' fee awards for abuse of discretion. Strong v. Bellsouth Telecomms., Inc., 137 F.3d 844, 850 (5th Cir. 1998). "To constitute an abuse of discretion, the district court's decision must be either premised on an erroneous application of the law, or on an assessment of the evidence that is clearly erroneous." Grigson v. Creative Artists Agency L.L.C., 210 F.3d 524, 528 (5th Cir. 2000). We must determine whether "the record clearly indicates that the district court has utilized the Johnson framework as the basis of its analysis, has not proceeded in a summary fashion, and has arrived at an amount that can be said to be just compensation." Forbush v. J.C. Penney Co., 98 F.3d 817, 823 (5th Cir. 1996) (internal quotation marks omitted).

Our review here is limited to one issue: the procedures the district court used to allocate the $6.875 million lump-sum attorneys' fee award among plaintiffs' counsel. Because we must vacate and remand, we do not address whether the individual awards to the Appellants were fair and reasonable.

## III. DISCUSSION

Appellants contend that the court abused its discretion because it used flawed procedures to award individual attorneys' fees and to review objections to those fees. We agree. For all practical purposes the five-member Fee Committee controlled the allocation of attorneys' fees in this case. In this circuit, a district court can in its discretion appoint a committee of plaintiffs' counsel to recommend how to divide up an aggregate fee award. Cf. Longden v. Sunderman, 979 F.2d 1095 (5th Cir. 1992). But the appointment of a committee does not relieve a

after the district court supplemented the record in response to an order from this court. The supplemental record indicates that Barrett sent the district court these statements on February 15, 2007, after receiving a request from the court for them a day earlier. February 17 was almost a month after the court's ex parte hearing with the Fee Committee. Barrett attached to Appellants' statements an ex parte cover letter addressed to the court that asserted Silvestri and Derbes claimed "grossly excessive" hours and expenses and "did no real work which was for the common benefit of the class, but in fact worked to the detriment of the class."

district court of its responsibility to closely scrutinize the attorneys' fee allocation, especially when the attorneys recommending the allocation have a financial interest in the resulting awards. Here, the district court abdicated its responsibility to ensure that the individual awards recommended by the Fee Committee were fair and reasonable. The court used flawed fee allocation procedures that are inconsistent with well-established class action principles and basic judicial standards of transparency and fairness. The following discussion explains the court's deviation from established class action principles, the Federal Rules of Civil Procedure, and Fifth Circuit caselaw.

## A. Class Action Principles

In a class action settlement, the district court has an independent duty under Federal Rule of Civil Procedure 23 to the class and the public to ensure that attorneys' fees are reasonable and divided up fairly among plaintiffs' counsel. See, e.g., Strong, 137 F.3d at 849 ("To fully discharge its duty to review and approve class action settlement agreements, a district court must assess the reasonableness of the attorneys' fees."); Manual for Complex Litigation § 14.11 (4th ed. 2004) ("The court must distribute the [fee award] among the various plaintiffs' attorneys, which may include class counsel, court-designated lead and liaison counsel, and individual plaintiff's counsel.").[8] The court's duty to review attorneys' fees is no less compelling in common fund cases,[9] like this case, where a separate fund to pay attorneys' fees is created as part of the class action settlement. See Strong, 137 F.3d at 849.

---

[8] See also Manual for Complex Litigation § 14.211 (4th ed. 2004) ("Judges have an independent duty to review fees and specifically determine if they are reasonable, applying traditional legal tests.").

[9] "The common fund doctrine provides that a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase, or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation, including attorneys' fees." In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig., 55 F.3d 768, 820 n.39 (3d Cir. 1995) [hereinafter In re GM Trucks].

The district court's close scrutiny of fee awards serves to "protect the nonparty members of the class from unjust or unfair settlements affecting their rights as well as to minimize conflicts that may arise between the attorney and the class, between the named plaintiffs and the absentees, and between various subclasses." Id. (internal quotations and citations omitted). The court's review also "guards against the public perception that attorneys exploit the class action device to obtain large fees at the expense of the class." Id. (citing In re GM Trucks, 55 F.3d at 820 (emphasizing that the "court's oversight function" serves to deflect the "potential public misunderstandings that they may cultivate in regard to the interests of class counsel") (internal quotations and citations omitted); Foster v. Boise-Cascade, Inc., 420 F. Supp. 674, 680 (S.D. Tex. 1976), aff'd, 577 F.2d 335 (5th Cir. 1978) (explaining that the court has the "obligation in any Rule 23 class action to protect [the class action device] from misuse" because the "most commonly feared abuse is the possibility that Rule 23 encourages strike suits promoted by attorneys who simply are seeking fat fees") (internal quotations and citations omitted)).

To fulfill its duty, "the district court must not cursorily approve the attorneys' fee provision of a class settlement or delegate that duty to the parties." Strong, 137 F.3d at 850. Although exacting judicial review of fee applications may be burdensome, it is "necessary to discharge the [court's] obligation to award fees that are reasonable and consistent with governing law." Manual for Complex Litigation § 14.231 (4th ed. 2004). This circuit requires district courts to use the "lodestar method" to "assess attorneys' fees in class action suits." Strong, 137 F.3d at 850. The district court must first determine the reasonable number of hours expended on the litigation and the reasonable hourly rate for the participating attorney. Id. The lodestar is then computed by multiplying the number of hours reasonably expended by the reasonable hourly rate. Id. The district court may adjust the lodestar upward or downward after a review of the

9

twelve factors set forth in Johnson. Forbush, 98 F.3d at 821. After the court calculates the lodestar, it must scrutinize a fee award under the Johnson factors and not merely "ratify a pre-arranged compact." Piambino v. Bailey, 610 F.2d 1306, 1328 (5th Cir. 1980) (holding that by summarily approving attorneys' fees presented in an unopposed settlement agreement, the district court "abdicated its responsibility to assess the reasonableness of the attorneys' fees proposed under a settlement of a class action, and its approval of the settlement must be reversed on this ground alone").

When a district court awards attorneys' fees it must explain how each of the Johnson factors affects its award. See Longden, 979 F.2d at 1099–1100. Its Johnson analysis "need not be meticulously detailed to survive appellate review." Forbush, 98 F.3d at 823. If the district court has articulated and clearly applied the correct criteria, "we will not require the trial court's findings to be so excruciatingly explicit in this area of minutiae that decisions of fee awards consume more paper than did the cases from which they arose." Louisiana Power & Light Co. v. Kellstrom, 50 F.3d 319, 331 (5th Cir. 1995) (internal quotations and citations omitted). Nonetheless, the district court's findings and reasons must be "complete enough to assume a review which can determine whether the court has used proper factual criteria in exercising its discretion to fix just compensation." Brantley v. Surles, 804 F.2d 321, 325–26 (5th Cir. 1986).

In this case, although no objection had been filed, the district court independently assessed the reasonableness of the $6.875 million lump-sum attorneys' fee award and considered the Johnson factors when it approved the class action settlement. Unfortunately, it failed to fulfill its further duty to monitor legal fees by its perfunctory approval of the allocation determined by the Fee Committee. The record indicates that the court received the Fee Committee's proposed fee allocation and order around 11:30 a.m. at the ex parte hearing on January 22, 2007. During the ensuing twenty minutes, the court questioned

members of the Fee Committee about the allocation and order. No sworn testimony was taken, no depositions were offered, and no affidavits were filed attesting to the accuracy or fairness of the proposed fee allocation. Further, because the hearing was ex parte, other plaintiffs' attorneys, including Appellants, were not present to confirm or challenge the Fee Committee's statements about their contributions to the case. After the hearing ended, the court spent at most one afternoon considering the Fee Committee's proposed allocation and order before approving them.[10] The record speaks for itself. Instead of closely scrutinizing the Fee Committee's allocation, the court rubber-stamped the committee's recommendation.

The court made matters worse when it sealed the exhibit listing the individual fees and the record entries pertaining to fees and placed a gag order on the plaintiffs' attorneys. These actions not only kept the public in the dark about each plaintiffs' attorney's award but also prevented counsel from communicating with each other and with their own clients on the subject. The lack of transparency about the individual fee awards supports a perception that many of these attorneys were more interested in accommodating themselves than the people they represent.[11]

Two major errors pervade the court's process. First, despite the court's statements at the ex parte hearing that it considered the Johnson factors, the record offers little substantiation that the court actually reviewed the individual

---

[10] The transcript of the January 22, 2007 ex parte hearing suggests that the court received documentation and a report from the Fee Committee before the hearing. But the record does not contain these documents. As noted above in footnote 7, the only time and expense statements and submissions from the Fee Committee in the record were sent to the court after the January 22, 2007 hearing.

[11] The Times-Picayune of New Orleans has published numerous news stories and editorials about the court's lack of transparency in this case. See, e.g., Susan Finch, Judge won't unseal fee records, Times-Picayune, August 10, at 1; Susan Finch, Judge seals records on legal fees in suit, Times-Picayune, April 6, 2007, at 1.

fee awards. The district court set forth no factual findings and reasons to support its awards of individual attorneys' fees. The court's order merely recites without application the twelve Johnson factors and a laundry list of other relevant considerations.[12] Moreover, the record is bereft of factual information essential to the conduct of a Johnson analysis as well as appellate review. The record lacks the attorneys' time and expense statements,[13] letters, comments, hourly billing rates, and other materials allegedly submitted by the Fee Committee to the district court on or before the ex parte hearing on January 22, 2007. See Manual for Complex Litigation § 14.223 (4th ed. 2004) ("In advance of any fee-award hearing, counsel should submit time and expense records, to the extent not previously submitted with the motion and in manageable and comprehensible form . . . ."). Nor does the record contain a breakdown of the hours and rates claimed by each attorney or their respective lodestars. In other words, the record strongly suggests that at the time of the ex parte hearing the court possessed no documents, other than the Fee Committee's proposed fee allocation, upon which it could base factual findings for awards of individual attorneys' fees.

This circuit, as will be discussed infra, does not forbid a district court to rely on fee allocation proposals submitted by attorneys. The proposals must, however, be factually supportable and consistent with the Johnson factors. Because the factual basis of the court's fee allocation remains unknown, this court cannot approve it.

---

[12] The court's order denying Appellants' motion for reconsideration also simply lists the twelve Johnson factors in a footnote. That order sets forth some brief findings and reasons why Appellants' awards should not be increased or reconsidered. But they also provide an inadequate basis for appellate review because, as discussed below, the court's procedures for reviewing objections to the fee awards were inherently flawed.

[13] As noted above, the only time and expense statements in the record are those of the Appellants. They made their way into the record because the court requested them from the Fee Committee as it prepared for the hearing on Appellants' motion for reconsideration on March 16, 2007.

Second, a district court has the discretion to seal a record, "but we think that this discretion should be used with care and exercised only where the justifications for doing so appear considerably stronger than those" presented by the Fee Committee. In re Equal Employment Opportunity Commission, 709 F.2d 392, 402 n.7 (5th Cir. 1983). The only justification posited for sealing the record here is to discourage internecine fee sharing disputes among the plaintiffs' lawyers. This is a weak and unconvincing reason for dispensing with the public nature of our judicial proceedings. Sealing the record protects no legitimate privacy interest that would overcome the public's right to be informed.

On a broad public level, fee disputes, like other litigation with millions at stake, ought to be litigated openly. Attorneys' fees, after all, are not state secrets that will jeopardize national security if they are released to the public. As the Third Circuit has noted, "[p]ublic confidence [in our judicial system] cannot long be maintained where important judicial decisions are made behind closed doors and then announced in conclusive terms to the public, with the record supporting the court's decision sealed from public view." United States v. Cianfrani, 573 F.2d 835, 851 (3d Cir. 1978). From the perspective of class welfare, publicizing the process leading to attorneys' fee allocation may discourage favoritism and unsavory dealings among attorneys even as it enables the court better to conduct oversight of the fees. If the attorneys are inclined to squabble over the generous fee award, they are well positioned to comment — publicly — on each other's relative contribution to the litigation.

## B. Federal Rules of Civil Procedure

The fee allocation procedures used by the district court also failed to comply with the Federal Rules of Civil Procedure. First, the court's order awarding attorneys' fees violated Rule 62(a), which imposes a ten-day automatic stay on the enforcement of judgments. See Fed. R. Civ. P. 62(a). Contrary to this rule, the order required that the fee awards "be distributed immediately." This is not a

13

trivial deviation. Indeed, it appears designed to forestall fee disputes by creating an incentive for the attorneys to "take their money and run" as soon as they signed the release of claims. More significant, immediate payments erect a serious obstacle to re-allocating fees, should the court later alter its award. The court, as its order acknowledges, would be placed in the difficult position of collecting pro rata sums from dozens of attorneys. Immediate payment essentially discouraged the court from trying to unscramble an unfair or erroneous initial allocation.

Second, the court violated Rule 23(h), which permits but does not require a district court to hold a hearing on a motion for attorneys' fees in a class action. See Fed. R. Civ. P. 23(h). If a court chooses to hold a "fee-determination hearing, the hearing format itself ha[s] to be fair. In other words, when a judge constructs a process for setting fees, the process must contain at least the procedural minima" of due process: notice and an opportunity to be heard. In re Nineteen Appeals Arising Out of San Juan DuPont Plaza Hotel Fire Litig., 982 F.2d 603, 614 (1st Cir. 1992) (reversing fee award in large-scale consolidated case in which lawyers from steering committee were permitted to testify, examine witnesses, and offer oral argument at evidentiary hearing, but other lawyers representing individual clients were not); see also In re Fine Paper Antitrust Litig., 751 F.2d 562, 584 (3d Cir. 1984) (stating that "the hearing on a fee application in an equitable fund case requires compliance with those procedural rules which assure fair notice and an adequate opportunity to be heard. Equally plainly, the requirement of an evidentiary hearing demands the application in that hearing of the Federal Rules of Evidence"); Alan Hirsch & Diane Sheehey, Fed. Judicial Ctr., Awarding Attorneys' Fees and Managing Fee Litigation 81 (2d ed. 2005) ("If a hearing is held, the court should ensure that all attorneys staking a claim to fees are given a reasonable opportunity to be heard.").

While holding a hearing may be discretionary, the decision to convene an

ex parte hearing was plainly unauthorized. Non-Fee Committee members were entitled to notice and an opportunity to be heard. The court commented to the Fee Committee that the ex parte hearing might raise due process concerns among absent attorneys. Its fears were fully justified because the Fee Committee exploited its opportunity to explain the proposed allocation at the ex parte hearing without challenge and without proof of Barrett's statements denigrating Appellants' contributions for the common benefit. Nor were Barrett and Barnow, the co-lead counsel, called upon to explain the coincidence that under the Johnson factors they were entitled to identical fees.

Nonetheless, Appellees contend that Appellants agreed to a fee allocation process involving ex parte hearings because they did not object to the court's appointment of a Fee Committee. We disagree. Ex parte proceedings are an exception to the rule in our judicial system and contrary to its adversarial nature. See, e.g., McKinney v. Paskett, 753 F. Supp. 861, 863 (D. Idaho 1990) ("The petitioner in this civil proceeding seeks unilateral in camera secrecy. This clearly flies in conflict with . . . the rules of civil procedure which allow ex parte hearings only in emergency matters.").[14] Attorneys cannot simply agree to hold secret hearings before the court. Moreover, the attorneys in this case made no agreement that ex parte hearings would be part of the fee allocation process. The court's order appointing the Fee Committee included no such provision, and there is no basis to infer an agreement.

---

[14] See also Fed. R. Civ. P. 5(a) ("Except as otherwise provided in these rules, every order required by its terms to be served, every pleading subsequent to the original complaint unless the court otherwise orders because of numerous defendants, every paper relating to discovery required to be served upon a party unless the court otherwise orders, every written motion other than one which may be heard ex parte, and every written notice, appearance, demand, offer of judgment, designation of record on appeal, and similar paper shall be served upon each of the parties."); Fed. R. Civ. P. 6(d) ("A written motion, other than one which may be heard ex parte, and notice of the hearing thereof shall be served not later than 5 days before the time specified for the hearing, unless a different period is fixed by these rules or by order of the court.").

Appellees also contend that the court's post-allocation procedures for hearing or reconsidering objections to fee awards provided Appellants an adequate opportunity to be heard. They did not. Because the court sealed the fee allocation list and placed a gag order on plaintiffs' attorneys, Appellants could not compare their awards to those of other attorneys.[15] They were not furnished with the hours and rates that other attorneys submitted or informed of the Fee Committee's process, yet such information was essential to enable them to challenge how the Fee Committee valued their work. See In re Vitamins Antitrust Litig., 398 F. Supp. 2d 209, 234 (D.D.C. 2005) (lead counsel responsible for fee allocation must "apply a universally fair standard of allocation to all participants, including itself"). One cannot even compare apples to oranges without knowing what the oranges are.

The district court was similarly handicapped in its review of Appellants' objections to their fee awards. The order approving the Fee Committee's allocation limited the court's review of a fee award to its specific circumstances and the relationship between the award and the attorney's contributions to the common benefit of the class.[16] The court should not have so limited itself and should have been able to compare the contributions of all plaintiffs' attorneys in order to determine if the fee allocation was equitable. After all, "[a]llocation means proportion; how does the share [one] counsel is taking compare to the shares others are getting?" In re Vitamins Antitrust Litig., 398 F. Supp. 2d at 234. Because Appellants were deprived of information necessary to contest their fee

---

[15] The court eventually unsealed the fee allocation list, but only after the court denied Appellants' motion for reconsideration.

[16] Nonetheless, the court's order implicitly recognizes that allocating fees requires making comparisons between the work of attorneys. The order states that if "any adjustments are made [to a fee award], anyone having previously accepted their individual allocation will be subject to a pro rata adjustment, i.e., proceeds may have to be returned to fund increases or there may be additional payments if awards are decreased."

awards, and the court's review did not allow comparison between Appellants' and other attorneys' awards, the procedures for reviewing Appellant's objections were inherently flawed.[17]

In re Copley Pharmaceutical, Inc., 50 F. Supp. 2d 1141 (D. Wyo. 1999), aff'd, 232 F.3d 900 (10th Cir. 2000) [hereinafter Copley], a case cited by Appellees, illuminates the deficiencies in the court's procedures. Copley was a class action in which the district court appointed a fee committee to recommend the allocation of a lump-sum fee award. After a contested hearing at which the court approved the fee committee's proposal, several attorneys objected to their awards.[18] In response to the objections the court held a de novo hearing, received motions, and reviewed time and expense statements and other materials. The court did not limit its review to the fee awards and contributions of the objectors. Instead, it reviewed the entire fee allocation and all attorneys' contributions.[19] Because its order approving the fee allocation had been brief, the court wrote a detailed decision explaining its review of the fee allocation and why it concluded

---

[17] Other guidelines for minimal procedural protections appear in the federal rules governing special masters and magistrate judges, who may be asked by a district court to oversee an attorneys' fee allocation. See e.g. Fed. R. Civ. P. 23(h)(4); Fed. R. Civ. P. 53 (special masters); Fed. R. Civ. P. 72(b) (magistrate judges). In either situation, all interested parties present their data to the deciding officer; have limited if any right to engage in ex parte contacts; and may, on a fully developed record, seek reconsideration or modification of the allocation by the district court. The transparency and completeness of special master and magistrate judge procedures highlight the abnormality of the district court's approach here.

[18] We express no opinion on the negotiation process by which Lead Counsel in Copley arrived at the proposed fee allocations. The process was challenged as violating constitutional due process, but any deficiency was remedied by the court's de novo review. It is the court's procedure, not those employed by counsel, which is relevant here.

[19] "While each objector, as he should, does not suggest how the Court should decide this matter overall, that is exactly what the Court must do. Necessarily, in a situation such as this where the Court is working with a finite amount of money, when one person gets more, another must get less. Accordingly, when the Court assesses the objectors' arguments why they should get more, it necessarily had to consider why another attorney should get less in an attempt to find where the equitable allocation lay. Although not stated in the remainder of the Court's Order, it was under this premise that it evaluated each award." Copley, 50 F. Supp. 2d at 1153.

the allocation was correct. The court's decision applied the Johnson factors. It also set forth findings and reasons explaining its allocations to lead counsel, who ran the fee committee and received the largest awards, and the objectors. The methodology followed by the Copley court is a helpful model for other district courts.

## C. Attorneys' Fee Awards in the Fifth Circuit

Appellees defend the court's unorthodox procedures by relying on Longden, supra, in which this court sustained a district court's reliance on the fee allocation proposed by a committee of plaintiffs' lawyers. Longden is clearly distinguishable and of narrower applicability than Appellees suggest. In Longden, this court held that a district court acted within its discretion when it awarded a lump-sum fee award and then let plaintiffs' counsel, except for one objecting attorney, allocate the award by agreement among themselves. 979 F.2d at 1101. The court determined the objector's individual fee award because she objected to co-counsels' aggregate fee award petition to the court. Her award was taken out of the lump-sum award for all attorneys. To calculate the objector's individual fee award and determine the lump-sum fee award, the court reviewed the time and expense records of all plaintiffs' counsel, applying the Johnson factors and making findings "sufficiently based on record evidence." Id. Longden highlights the district court's duty to scrutinize the allocation of a fee award when an attorney objects to his co-counsels' fee award recommendations. It does not stand for the proposition that courts can delegate their duty to allocate a fee award to a committee of interested attorneys who have reached no agreement among themselves and then approve the allocation after a perfunctory review.

Appellees cite several district court cases from this circuit in which courts followed the procedure approved in Longden: awarding a lump-sum attorneys' fee and allowing counsel to divide up the award by agreement. See, e.g., Turner v.

Murphy Oil USA, Inc., 472 F. Supp. 2d. 830, 869-870 (E.D. La. 2007).[20] That fee allocation procedure, however, is significantly different from the procedures used here. It is one thing for all attorneys to come to an agreement about dividing up fees, and quite another for five attorneys to declare how an award will cover themselves and seventy-four other attorneys with no meaningful judicial supervision or review.

Appellees also cite a number of cases, largely from other circuits, in which courts have appointed committees of attorneys to propose a fee allocation to the court for its consideration. See, e.g., Copley, 50 F. Supp. 2d at 1148–49. We do not dispute the utility of initial delegation, which is not required but is within the district court's discretion. There is no indication, however, that the district courts in other cases dispensed with traditional judicial standards of transparency, impartiality, procedural fairness, and ultimate judicial oversight as the court in this case did. Even In re Eunice Train Derailment, the case mentioned by the Fee Committee at the ex parte hearing to justify placing the fee allocation list under seal, shows that other courts are not doing what Appellees convinced the court to do here.

Like the court in this case, the court in In re Eunice Train Derailment appointed a fee committee to recommend an allocation, placed its fee allocation list under seal, and prohibited plaintiffs' attorneys from disclosing their fee awards. But, unlike this case, the court required attorneys to submit their contemporaneous time records to a special master. The court's order limited the gag order to sixty days.[21] Finally, the court ordered fee distribution to occur only

---

[20] In some of these cases, the court also stipulated that if counsel were unable to agree upon an allocation, it would appoint a special master to recommend a fee allocation. See, e.g., Turner v. Murphy Oil USA, Inc., 472 F. Supp. 2d. at 869-870; Batchelder v. Kerr-McGee Corp., 246 F. Supp. 2d 525, 534 (N.D. Miss. 2003).

[21] We do not approve any gag order or sealing of the record in these cases, but the Eunice order was at least more limited than this one.

after attorneys were told their fee awards and after the deadlines for objection or appeal had expired. Here, in contrast, there was no disinterested court officer, such as a special master, working with the Fee Committee to review attorneys' time and expense statements; the fee record was placed under seal indefinitely and attorneys were also barred indefinitely from disclosing their awards; and fees were ordered to be paid "immediately," before any challenges could be filed.

Appellees' contend that the functional value of appointing a committee of attorneys to propose a fee allocation in "complex litigation is significant, and the danger of abuse is small, when judged in light of the guiding effect of judicial supervision." It is likely that lead counsel may be in a better position than the court to evaluate the contributions of all counsel seeking recovery of fees. But our precedents do not permit courts simply to defer to a fee allocation proposed by a select committee of attorneys, in no small part, because "counsel have inherent conflicts." In re Diet Drugs Products Liab. Litig., 401 F.3d 143, 173 (3d Cir. 2005) (Ambro, J., concurring). As Judge Ambro noted, "They make recommendations on their own fees and thus have a financial interest in the outcome. How much deference is due the fox who recommends how to divvy up the chickens?" Id.

Here, members of the Fee Committee "had a direct conflict of interest: they were suggesting to the District Court how to proceed on matters near and dear — dividing a limited fund among themselves and other firms. Such a direct conflict of interest strongly suggests that affording substantial deference is inappropriate." Id. at 173–74 . Although the proposed allocation "may ultimately be fair, careful attention must be paid to the procedures by which the allocation is set." If a district court "chooses to rely on the recommendations of a committee of interested attorneys, it then becomes necessary to scrutinize more closely those recommendations." Id.

## IV. CONCLUSION

For the foregoing reasons, we vacate the district court's order awarding

individual attorneys' fees and its order denying Appellants' motion for reconsideration. On remand, the district court shall determine, on an adequate factual record and by application of the Johnson factors, the adequacy of the Fee Committee's recommended allocation and the fee requests of any attorneys who choose to object. In particular, the court shall compare, as needed, counsels' respective contributions for the common benefit. No sealing or ex parte communications will be permitted. The final award shall be sufficiently supported with written reasons to facilitate judicial review.

The order of the district court is thus VACATED and REMANDED WITH INSTRUCTIONS.

REAVLEY, Circuit Judge, specially concurring:

I concur in the judgment, and I agree generally with this description of the procedure required for the fee allocation. The procedure was not followed: appellants were given no opportunity to study and dispute the allocation, the district court has not explained the allocations, and we have no record to permit our review.

It does appear to me that class counsel performed excellent work to obtain in excess of $99 million for the class. Those attorneys who contributed to that recovery are entitled to receive fees based on the quantity and quality of effort expended for that purpose. And other lawyers for members of the class are also entitled to receive compensation for their efforts to serve that purpose. The allocation may be initiated by those attorneys who actually managed the case. Any dispute about that allocation must be resolved by the court after full and fair hearing, considering the Johnson factors where appropriate, explaining its decision for all and for our review – affording that court discretion.